25 Civ. 4100 (PAE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN GABRIEL ALMONTE ESPINAL and ERICK ALMONTE ESPINAL,

                                        Plaintiffs,

                -against-

MALE POLICE OFFICER 1, MALE POLICE OFFICER 2, FEMALE POLICE OFFICERS 4 THROUGH 15, and THE CITY OF NEW YORK,

                                        Defendants.

**MEMORANDUM OF FACT AND LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE 25 CIV. 4100 (PAE) AND 25 CIV. 5089 (KPF)**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: John McLaughlin*
*Tel:  (212) 356-2670*
*Matter No.:  2024-075841*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................II

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

      A.   The July 6, 2024 incident (25 Civ. 5089 (KPF)) ................................. 2

      B.   The November 11, 2024 incident (25 Civ. 4100 (PAE)) ............................................................................................ 6

LEGAL STANDARD.......................................................................................................... 8

ARGUMENT

      POINT I

            CONSOLIDATION IS NOT WARRANTED BECAUSE THESE ACTIONS DO NOT PRESENT THE TYPE OF COMMON QUESTIONS OF FACT OR LAW RULE 42(A) REQUIRES .................................................... 9

      POINT II

            CONSOLIDATION WILL NOT PROMOTE EFFICIENCY, AND IT WILL CREATE PREJUDICE ......................................................... 12

         A.   The Prejudicial Spillover Effect of Consolidation Outweighs Any Potential Promotion of Efficiency ................................................... 12

         B.   Narrower Case Management Tools Are Available and Preferable.................................................... 15

CONCLUSION.................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages**

*Bascom Launder Corp. v. Telecoin Corp.,*
    15 F.R.D. 277 (S.D.N.Y. 1953) ...............................................................................13

*Chem One, Ltd. v. M/V Rickmers Genoa,*
    660 F.3d 626 (2d Cir. 2011).....................................................................................9

*Devlin v. Transp. Commc'ns Int'l Union,*
    175 F.3d 121 (2d Cir. 1999).....................................................................................9

*In re Facebook, Inc.,*
    MDL No. 12-2389, 2012 U.S. Dist. LEXIS 174961
    (S.D.N.Y. Dec. 6, 2012).............................................................................................9

*Fisch v. Consulate Gen. of the Republic of Pol.,*
    No. 11 Civ. 4182 (SAS), 2011 U.S. Dist. LEXIS 97549
    (S.D.N.Y. Aug. 30, 2011) ...................................................................................9, 10

*Flintkote Co. v. Allis-Chalmers Corp.,*
    73 F.R.D. 463 (S.D.N.Y. 1977) ............................................................................10

*Garber v. Randell,*
    477 F.2d 711 (2d Cir. 1973).............................................................................14, 15

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990).................................................................1, 9, 10, 14

*Johnson v. Kerney,*
    1993 U.S. Dist. LEXIS 18503
    (E.D.N.Y. Dec. 16, 1993) .......................................................................................10

*Kaplan v. Gelfond,*
    240 F.R.D. 88 (S.D.N.Y. 2007) ..............................................................................9

*Karcz v. City of North Tonawanda,*
    No. 61-CV-0628V(Sr), 2024 WL 168336
    (W.D.N.Y. Jan. 16, 2024) .......................................................................................11

*Liberty Media Corp. v. Vivendi Universal, S.A.,*
    842 F. Supp. 2d 587 (S.D.N.Y. 2012)................................................................9, 10

*Moore Charitable Found. v. PJT Partners, Inc.,*
    40 N.Y.3d 150 (N.Y. 2023) ....................................................................................15

**Cases**                                                                                              **Pages**

*In re Repetitive Stress Injury Litig.*,
    11 F.3d 368 (2d Cir. 1993)........................................................................................9, 10

*Ricciuti v. N.Y.C. Transit Auth.*,
    796 F. Supp. 84 (S.D.N.Y. 1992) .........................................................................13

*Sidari v. Orleans County*,
    174 F.R.D. 275 (W.D.N.Y. 1996)........................................................................13

*Turpel v. Canopy Growth Corp.*,
    704 F. Supp. 3d 456 (S.D.N.Y. 2023)..................................................................9

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)............................................................................................11

*Webb v. Goord*,
    197 F.R.D. 98 (S.D.N.Y. 2000) ..........................................................................12

**Statutes**

Fed. R. Civ. P. 1 ......................................................................................................8

Fed. R. Civ. P. 42 ...............................................................................................11, 14

Fed. R. Civ. P. 42(a) ............................................................1, 2, 8, 10, 11, 13, 14, 16

## PRELIMINARY STATEMENT

Plaintiffs seek to consolidate two separate street encounters that occurred under different circumstances more than four months apart—July 6, 2024 (the "July Action") and November 11, 2024 (the "November Action")—into a single action. Rule 42(a) does not require that result. Although the Court has discretion to manage its docket, consolidation should not be ordered where it would risk unfair prejudice or juror confusion by blending distinct events, parties, and evidence into a single merits presentation.

This is not a case where consolidation would streamline a single set of liability and damages issues. Only one plaintiff—Erick Almonte Espinal—appears in both actions. The remaining plaintiffs are entirely distinct, including Juan Gabriel Almonte Espinal, who is a plaintiff only in the November Action. Likewise, even on Plaintiffs' own account, the only overlap in individual defendants is limited to two officers, and those officers are not alleged to have interacted with the same plaintiffs across the two incidents. In the July Action, Plaintiffs describe Officers Jeselson and Lopez-Martinez engaging with different family members during a crowded multi-person encounter; in November, Plaintiffs' allegations concern a separate bicycle stop and different plaintiff-officer interactions. Consolidation would therefore not create one coherent "common proof" case—it would combine two incident-specific trials into one, forcing a jury to compartmentalize different events, different parties, different alleged conduct, and distinct injuries.

The prejudice risk is not theoretical. Plaintiffs have made clear that they intend to use the July incident to "explain" the November incident and to press an inflated, aggregated damages narrative. That is exactly the kind of "spillover" that Rule 42(a) is designed to prevent. And whatever marginal efficiencies Plaintiffs posit can be achieved—if warranted at all—

through targeted case-management measures short of consolidation, which Rule 42(a) expressly authorizes, without merging two separate incidents into a single merits presentation.

Accordingly, Plaintiffs' motion should be denied.

## BACKGROUND

These actions arise from two separate street encounters occurring more than four months apart, involving different groups of plaintiffs, different alleged conduct, and incident-specific proof. Only one plaintiff—Erick Almonte Espinal—appears in both actions, and even the two officers identified as overlapping are not alleged to have interacted with the same plaintiffs across the two incidents. The July 6, 2024 incident involved a crowded, multi-person encounter with multiple family members; the November 11, 2024 incident involved a separate bicycle stop and a different sequence of events. As set forth below, the factual record confirms that these are discrete encounters, not variations of a single transaction or occurrence.

**A.      The July 6, 2024 incident (25 Civ. 5089 (KPF)).**

According to the available record, the July 6th incident began as a street stop outside a "99 Cents Plus" store in the Bronx, where Plaintiffs had illegally double parked a vehicle on the corner. (50-H Hearing Transcript Jhoan Alberto Marchena Gomez dated May 8, 2025, annexed to McLaughlin Decl. as "Exhibit A", at DEF000192–93; *see also* Officer Satinderpal Singh BWC video, Bates No. DEF000355 ("Axon_Body_3_Video_2024-07-06_2006-3"), July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit B," at 20:06:03–20:06:25).

Officers approached the illegally parked vehicle, requested license/registration through the open window, and ordered Juan Adonis—in the driver's seat—out of the car after he indicated he had "none." (*See* Officer Evan Jeselson BWC video, Bates No. DEF000364 ("Axon_Body_3_Video_2024-07-06_2006-5"), July 6, 2024 incident, 25 Civ. 5089, annexed to

McLaughlin Decl. as "Exhibit C") Juan Adonis testified that the officers immediately identified him as having an open warrant. (50-H Hearing Transcript of Juan Adonis Almonte Espinal dated May 19, 2025, annexed to McLaughlin Decl. as "Exhibit D", at DEF000245–47). As the encounter unfolded beyond Juan Adonis's removal from the vehicle, officers' interactions extended to the other occupants and individuals at the scene, and multiple arrests and Desk Appearance Tickets resulted. (*See* Compl., 25 Civ. 5089, ECF No. 10).

As the encounter progressed, additional family members arrived at the scene after learning that the initial occupants of the vehicle were being questioned or detained. According to Plaintiffs' own testimony, the scene became increasingly crowded, with multiple individuals approaching officers during an active street interaction. (McLaughlin Decl., Gomez 50-H, Ex. A, at 9:18–10:1). At his 50-h hearing, Gomez confirmed that several family members were present and that voices were raised as people gathered near the vehicle and the officers. (*Id.*). Plaintiffs' actions and screaming obscenities at the police, including harsh racist epithets (one or more of whom repeatedly yelled "MAYDAY") attracted a crowd of more than 50 people. (*See* Officer Perry BWC video, Bates No. DEF000373 ("Axon_Body_3_Video_2024-07-06_2006-4"), July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit E"). The situation had largely calmed down by approximately 8:12 p.m., when Juan Adonis, Erick, and Jhoan were already placed under arrest before things escalated further. (*See* Pl. Memorandum, at p. 4; McLaughlin Decl., Ex. E, at 20:12:00–20:13:00).

Additional family members arrived and repeatedly attempted to access their vehicle to retrieve belongings, prompting officers to intervene to keep the vehicle secured. After Plaintiff Alisha saw that the police had removed and handcuffed her boyfriend and siblings from the car, and despite being told that she could not enter the car, she nevertheless pushed open

Plaintiffs' car door and retrieved a handbag; the police intercepted the bag, pulled it back and threw it on a car seat    (*See* Officer Perry BWC video, Bates No. DEF000343 ("Axon_Body_3_Video_2024-07-06_2006"), July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit F", at 20:09:47–20:10:00).

Subsequently, Officer Jeselson entered the driver's seat to secure the vehicle. (*See* Officer Evan Jeselson BWC video, Bates No. DEF000364 ("Axon_Body_3_Video_2024-07-06_2006-5"), July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit C", at 20:12:42 to 20:12:54).[1] Approximately 30 seconds later, Ana Miranda opened the front passenger door and attempted to retrieve the bag again while yelling words to the effect of "Give me my bag." (McLaughlin Decl., Ex. C, at 20:13:10–20:13:14). While Officer Jeselson was looking toward that passenger-side interaction and preventing Ana Miranda from removing the bag, Juan Ramon approached the driver's side and reached into the window, swiping at Jeselson and dislodging his BWC from his shirt**.** (*Id.* at 20:13:14–20:13:17). Immediately thereafter, Jeselson exited the driver's side holding the camera, which is also depicted in Plaintiffs' Exhibit D (*Id.* at 20:13:17; Pl. Ex. D at 20:13:20–20:13:27 (BWC clearly visible in Officer Jeselson's right hand at the latter timestamp)). He then placed the camera in his pocket while assisting other

---

[1] Plaintiffs' assertion that Officer Jeselson's body-worn camera was "not activated" is incorrect. Defendant's initial disclosures identify multiple BWC recordings for Officer Evan Jeselson—Bates Nos. DEF000332, DEF000336, DEF000346, DEF000363, DEF000364, and DEF000375—reflecting multiple activations. (City's Initial Disclosures dated Nov. 3, 2025, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit G"). Those disclosures, along with the corresponding documents and BWC videos, were served on Plaintiffs' counsel on November 3, 2025, including via Kiteworks. (Email from Sandra A. Bober transmitting Initial Disclosures and advising production via Kiteworks dated Nov. 3, 2025, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit H"). Plaintiffs' counsel's office then downloaded the production on November 4, 2025, including the disclosures and 50 video files. (Kiteworks secure-mail download confirmation reflecting daguirre@glenngarber.com downloaded 52 files on Nov. 4, 2025, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit I").

officers in arresting Juan Frailyn. (McLaughlin Decl., Ex. C, at 20:13:30; Pl. Ex. D, at 20:13:30–20:13:34).

As Jeselson exited the vehicle, he put the bag into the rear passenger area, after which the dispute resumed: on or about 20:13:19 on Officer Perry's BWC (immediately after Juan Ramon swiped at Officer Jeselson) Ana Miranda is again at the vehicle—now at the rear passenger door—and appears to retrieve the bag; Officer Perry immediately reasserts control over the bag by taking it and throwing it back onto the rear passenger seat and closing the door while ordering "Back up." (Officer Darryl Perry BWC video, Bates No. DEF000373, July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit E", at approx. 20:13:19–20:13:23). In response, Ana Miranda moved toward Officer Perry while protesting, and Officer Perry used his arms and body positioning to push her back to regain control of the vehicle area and keep the passenger door secured, causing her to fall backwards. (McLaughlin Decl., Ex. E, at 20:13:23–20:13:27). This **fourth attempt** to access the vehicle, coming within minutes of the first attempt by Alisha at the front passenger door, and only seconds after the second attempt by Ana Miranda and the driver-side assault on Jeselson by Juan Ramon—was the immediate factual predicate for the surge of officer attention and the physical confrontation that followed.

Juan Frailyn advances several steps toward the officers with clenched fists held close to his chest while yelling words to the effect of "don't touch me, don't touch me." (Body-worn camera footage, Bates No. DEF000323, July 6, 2024 incident, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit J", at approx. 20:13:30–20:13:35). A moment later, he can be heard saying words to the effect of "Watch out bro . . . Don't fucking touch me," while continuing to back away or reposition with his hands up and fists clenched. (McLaughlin Decl.,

Ex. J, at approx. 20:13:32–20:13:36). Officer Perry then pushed Juan Frailyn backwards and initiated an arrest, as other officers, including Jeselson, quickly joined to assist. (*Id.*).

**B.     The November 11, 2024 incident (25 Civ. 4100 (PAE)).**

At or about 8:18 p.m., Officer Lopez-Martinez was driving a marked police vehicle south down Grand Concourse approaching 198th Street in the Bronx. (*See* Dashboard Mounted Camera, Bates No. DEF000001, Nov. 11, 2024, 25 Civ. 4100, annexed to McLaughlin Decl. as "Exhibit K" (location of vehicle); Officer Lopez-Martinez BWC video, Bates No. DEF000011, Nov. 11, 2024, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit L," at 20:20:12 (Lopez-Martinez driving vehicle)). Officer Jeselson was seated in the passenger seat, with Officer Cruger in the rear on the driver's side. At the intersection of Grand Concourse and 198th Street, Officer Lopez-Martinez made a U-turn, following the two Plaintiffs and one other young male north up Grand Concourse where all three, riding Citi Bikes, turned left onto East 199th Street, where at least one of the cyclists was riding on the sidewalk (*See* McLaughlin Decl., Ex. K, at 20:19:00–20:19:28). The police vehicle continued south in pursuit, turning left onto Minerva Place and then right onto Creston Avenue, and left again onto East 198th Street, then left onto Grand Concourse. (*See* McLaughlin Decl., Ex. L, at 20:20:12–20:20:50). At that point, Officers Jeselson and Cruger exited the still-moving vehicle to pursue the cyclists on foot, whereupon Plaintiff Erick jumped off his electric Citi Bike to flee on foot, leaving it lying on the ground. (*See* Officer Jeselson BWC video, Bates No. DEF000008, Nov. 11, 2024, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit M," at 20:20:49).

Jeselson and Cruger exited the vehicle as it was facing south at the intersection of 198th Street and Grand Concourse. Jeselson turned right and tripped. Both officers headed northeast onto the far sidewalk in front of 2874 Grand Concourse, where Officer Cruger caught the fleeing Erick and took him to the ground. (Officer Cruger BWC video, Bates No.

DEF000003, Nov. 11, 2024, 25 Civ. 5089, annexed to McLaughlin Decl. as "Exhibit N," at 20:21:00). Erick rolled onto his side and appeared to try to get free or rise to his feet before Officer Jeselson arrived to assist in restraining him. (*Id.* at 20:21:00–20:21:07; McLaughlin Decl., Ex. M, at 20:21:00–20:21:07; Pl. Ex. I, at 0:02–0:04). Officer Jeselson then restrained Plaintiff Erick while Officer Cruger applies handcuffs. (McLaughlin Decl., Ex. M, at 20:21:10–20:21:35).

Simultaneously, Officer Lopez-Martinez was standing between where the arrest was taking place and three young men, including Plaintiff Gabriel, standing within approximately three feet and yelling at the officers while filming. (McLaughlin Decl., Ex. L, at 20:21:24–28; *see also* McLaughlin Decl., Ex. M, at 20:21:24). After Officer Lopez-Martinez put her hands out in front of her and ordered the males to "move back" to create distance, Plaintiff Gabriel began to yell "Don't touch me" and when she placed her arm on him to try to move him backwards, he struck her with an open hand. (McLaughlin Decl., Ex. L, at 20:21:28–20:21:30). As Jeselson finished placing the handcuffs on Erick, he stood up and began to walk over toward Lopez-Martinez, at which point he witnessed Gabriel again refuse to move back, and again strike Officer Lopez-Martinez. (McLaughlin Decl., Ex. M, at 20:21:34–20:21:36; McLaughlin Decl., Ex. L, at 20:21:34–20:21:36). Officer Jeselson then raises his hands and pushes Plaintiff Gabriel backwards. (McLaughlin Decl., Ex. M, at 20:21:34–20:21:36). Gabriel continues to resist, grabbing onto Jeselson's right sleeve using his left hand. (*Id.* at 20:21:38). Officer Jeselson manages to secure Gabriel's left wrist using his own right arm (*Id.* at 20:21:39–41) as Gabriel lifted his right arm above his head as if to strike Officer Jeselson. (Pl. Ex. I, at 0:36–0:37). Officer Jeselson then struck Gabriel one time with his left hand. (McLaughlin Decl., Ex. M, at

20:21:42). Gabriel continued to struggle, wrestled his left arm free and attempted to strike Jeselson in the face. (Pl. Ex. I, at 0:40–41).

Gabriel then held his hands close against his chest/stomach and refused Jeselson's orders to "give me your hands," so Jeselson pulled Gabriel to the side and onto the ground. At the same time, Officer Cruger called for backup. (McLaughlin Decl., Ex. N, at 20:21:48). Erick and Gabriel were then arrested and issued Desk Appearance Tickets.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact," the Court may (1) join matters for hearing or trial, (2) consolidate the actions, or (3) "issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). This Rule, like all of the Federal Rules, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Consolidation under Rule 42(a) is discretionary, and the moving party bears the burden of demonstrating sufficient commonality of factual and legal issues to warrant consolidation. *Fisch v. Consulate Gen. of the Republic of Pol.*, No. 11 Civ. 4182 (SAS), 2011 U.S. Dist. LEXIS 97549, at *3 (S.D.N.Y. Aug. 30, 2011) (quoting *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)).

In determining whether consolidation is appropriate, courts in this Circuit "consider both equity and judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). Courts recognize that differences in the causes of action, defendants, or other case-specific features do not necessarily render consolidation inappropriate where actions present sufficiently common questions of fact and law. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). At the same time, before ordering consolidation a district court must examine

"the special underlying facts" with "close attention." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 592 (S.D.N.Y. 2012).

Consolidation may serve the interests of judicial economy and avoid unnecessary costs or delay. *In re Facebook, Inc.*, MDL No. 12-2389, 2012 U.S. Dist. LEXIS 174961, at *19 (S.D.N.Y. Dec. 6, 2012) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990)). However, consolidation should be considered only when "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 463 (S.D.N.Y. 2023) (quoting *Chem One, Ltd. v. M/V Rickmers Genoa*, 660 F.3d 626, 642 (2d Cir. 2011)). Consistent with that principle, the Second Circuit emphasizes the Court's paramount concern for ensuring a fair and impartial adjudication. *Johnson*, 899 F.2d at 1285.

## ARGUMENT

### POINT I

### CONSOLIDATION IS NOT WARRANTED BECAUSE THESE ACTIONS DO NOT PRESENT THE TYPE OF COMMON QUESTIONS OF FACT OR LAW RULE 42(A) REQUIRES

Rule 42(a) permits consolidation only where actions "involve a common question of law or fact," and the movant bears the burden to show genuine commonality sufficient to justify consolidation. FED. R. CIV. P. 42(a); *see also Fisch*, 2011 U.S. Dist. LEXIS 97549, at *3 (citing *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)). Even where some overlap exists, the Court must examine "the special underlying facts" with "close attention." *Liberty Media Corp.*, 842 F. Supp. 2d at 592 (quoting *In re Repetitive Stress Injury Litig.*, 11 F.3d at 373).

9

There is no "presumption in favor of consolidation [that] can only be overcome if a party would suffer significant prejudice." (Pl. Mem. 7 (citing *Johnson*, 899 F.2d at 1285)). To the contrary, *Johnson* offers no opinion on when a district court abuses its discretion in **declining** to consolidate; it emphasizes instead that a district court's discretion in consolidating cases is not unfettered: "[c]onsiderations of convenience and economy must yield a paramount concern for a fair and impartial trial." *Johnson*, 899 F.2d at 1285 (citing *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463 (S.D.N.Y. 1977)). Indeed, courts deny consolidation even when "there is undoubtedly some overlap between . . . two suits." *Johnson v. Kerney*, 1993 U.S. Dist. LEXIS 18503, at *18 (E.D.N.Y. Dec. 16, 1993) (denying consolidation of two actions where there were different defendants named in each and each action pertained to different aspects of a single event). Put differently, Rule 42(a) is not a vehicle to bundle distinct events merely because they share a broad theme (e.g., "police misconduct")—especially where consolidation invites spillover, jury confusion, and prejudice.[2]

That standard is not met here. Plaintiffs seek to consolidate two distinct street encounters occurring months apart—July 6, 2024 and November 11, 2024—involving different groups of plaintiffs, different dates, different locations, different alleged conduct, and largely incident-specific proof. Plaintiffs' own motion papers underscore the mismatch: the November Action has two plaintiffs (Erick Almonte Espinal and Juan Gabriel Almonte Espinal), while the July Action has eight named plaintiffs, only one of whom (Erick) overlaps—Juan Gabriel is not a

---

[2] Plaintiffs similarly attempt to import language from *United Mine Workers v. Gibbs* for the proposition that the "impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." 383 U.S. 715, 724 (1966). But *Gibbs* addressed pendent jurisdiction (whether related state-law claims may be heard in the same action), not consolidation of separately filed cases under Rule 42. In any event, *Gibbs* is expressly tethered to "fairness," which is precisely what full consolidation jeopardizes on this record.

plaintiff in the July Action. Even the limited overlap Plaintiffs identify among individual defendants does not bridge that divide, because the officers allegedly involved in both incidents are not alleged to have interacted with the same plaintiffs across the two encounters.

Courts routinely deny consolidation in precisely these circumstances. In *Karcz v. City of North Tonawanda*, the court denied consolidation where one action concerned "a discrete event" and the "only individual defendants named in both actions" were "not alleged to have been present" for the event at issue in the other case, concluding that consolidation would not serve judicial economy and would likely prejudice defendants. No. 16-CV-0628V(Sr), 2024 WL 168336, at *1–3 (W.D.N.Y. Jan. 16, 2024). The same is true here: consolidation would not produce a single coherent liability-and-damages case, but would instead bundle separate incidents into one proceeding, inviting confusion and spillover rather than efficiency.

The limited overlap Plaintiffs identify does not cure the problem. Plaintiffs contend that Officers Jeselson and Lopez-Martinez were involved in both incidents. But even taking Plaintiffs' account at face value, the relevant questions for trial remain fundamentally incident-specific: who did what, to whom, when, where, and why—on July 6th versus on November 11th. Plaintiffs themselves do not present the "in common" officers as interacting with the same people across both events; rather, Plaintiffs' July narrative places those officers in roles directed at different family members than the alleged interactions at issue on November 11th. The core proof is therefore not "common"; it is duplicative only at the highest level of abstraction ("police misconduct"), which is not enough.

Courts deny consolidation where similarities are superficial and the differences risk confusion and unfairness. In *Webb v. Goord*, for example, the court denied consolidation despite thematic similarity, explaining that when the "legal and factual distinctions between the

11

two actions are significant" and "superficial similarities between them can easily lead to confusion of the issues," consolidation should be denied. 197 F.R.D. 98, 101 (S.D.N.Y. 2000).

**POINT II**

**CONSOLIDATION WILL NOT PROMOTE EFFICIENCY, AND IT WILL CREATE PREJUDICE**

**A.    The Prejudicial Spillover Effect of Consolidation Outweighs Any Potential Promotion of Efficiency.**

Consolidation "may not be granted where it may result in prejudice," particularly where it would require jurors to perform the "difficult task of segregating testimony as applicable to one defendant and not to the others." *Bascom Launder Corp. v. Telecoin Corp.*, 15 F.R.D. 277, 277–78 (S.D.N.Y. 1953). That concern is acute here. Only one plaintiff—Erick Almonte Espinal—overlaps between the two actions; the remaining plaintiffs are entirely distinct. And critically, even the two officers Plaintiffs identify as "in common" across both cases did not interact with the same plaintiffs at the two incidents. In July, Plaintiffs' own presentation places Officers Jeselson and Lopez-Martinez engaging with Alisha, Juan Ramon, and Juan Frailyn, amid a crowded, multi-person street encounter; in November, those same officers' alleged conduct concerns only Erick and Juan Gabriel during a separate bicycle stop months later.

Trying these incidents together would therefore require the jury to constantly compartmentalize which officer allegedly did what to which plaintiff, on which date, under which circumstances—an exercise Rule 42(a) does not demand and which risks confusion and spillover. As courts have recognized, such aggregation risks "contaminating the minds of jurors with evidence that is applicable to some defendants but not to others." *Ricciuti v. N.Y.C. Transit Auth.*, 796 F. Supp. 84, 87 (S.D.N.Y. 1992). The problem is compounded because the damages proof will also be incident-specific—different medical records, different claimed injuries, and

different causation questions tied to July versus November—yet Plaintiffs expressly seek to have a jury hear both incidents together so that the earlier encounter can be used to "explain" the later one. A consolidated proceeding would invite the jury to reason from one alleged incident to liability and damages on the other. A "lumping together of such claims, which amounts to guilt by association, would unfairly prejudice the defendants." *Sidari v. Orleans County*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996).

Plaintiffs argue consolidation is warranted because, absent consolidation, Officers Jeselson and Lopez-Martinez, Erick, and certain witnesses would face duplicative depositions. But, as noted above, the overlap is narrow compared to the scope of discovery that is unique to each incident. Their liability narratives and damages are distinct by plaintiff and by incident. At most, it may be appropriate to coordinate certain depositions to avoid repeating generic background topics—e.g., a single deposition of Erick with reasonable accommodation for additional time to cover both incidents—without consolidating the entire actions. Rule 42(a) expressly authorizes alternatives "to avoid unnecessary cost or delay" short of full consolidation.

Plaintiffs' professed concern about duplicative discovery also rings hollow because Plaintiffs have made no apparent effort to stipulate to any of the narrower discovery mechanisms that would address true overlap—such as coordinated scheduling or a single deposition of an overlapping witness with an appropriate time allotment—without consolidating the actions for all purposes. Instead, Plaintiffs insist on full consolidation while simultaneously advancing the position that the July incident "explains" the November incident and should be presented together for damages purposes.

On this record, Plaintiffs' motion reads less like an effort to streamline discovery and more like an effort to leverage one incident to inflate perceived culpability and damages in

the other. That is exactly why full consolidation is inappropriate. Plaintiffs cannot avoid that problem by asserting that any prejudice would be "of the officers' own making[]" (Pl. Mem. 9) the question under Rule 42 is whether aggregation would compromise a fair adjudication. *Johnson*, 899 F.2d at 1285.

The Second Circuit has rejected precisely that type of aggregation. In *Garber v. Randell*, the Court held that the district court abused its discretion by folding narrow, incident-specific claims into a broader action involving different parties and different alleged misconduct, explaining that allowing such claims to proceed together in a "'mixed bag' type of consolidated complaint would be fundamentally unfair." 477 F.2d 711, 717 (2d Cir. 1973). The same risk is present here: consolidation would invite the jury to conflate two separate encounters, months apart, involving different plaintiffs and different alleged conduct, in service of a single amplified narrative of wrongdoing.

Plaintiffs also contend that consolidation is warranted because the July incident is "relevant" to the November Action's negligent hiring/training/supervision/retention/discipline theory. (Pl. Mem. 8–9). But that argument collapses on the present record. New York negligent hiring/retention-type theories (however styled) turn on notice—i.e., whether the employer knew or should have known of the employee's alleged propensity for the type of misconduct at issue. *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (N.Y. 2023). Here, neither Plaintiffs' own submission nor anything else in the record identifies any CCRB or IAB complaint (or any other notice mechanism) arising from the July incident that would have put the City on notice of any purported propensity by Officer Jeselson or Officer Lopez-Martinez before the November encounter. Without such record evidence of notice, Plaintiffs' "negligent hiring"

theory provides no basis to consolidate two otherwise distinct incidents; it simply repackages Plaintiffs' preferred narrative ("the City did nothing after July") as an efficiency argument.

Finally, as a practical matter, tying a two-plaintiff case to an eight-plaintiff case makes the overall litigation move at the pace of the larger, slower action. Here, the July Action's broader plaintiff group and broader medical and damages discovery will predictably extend the schedule, while the November Action can proceed more expeditiously. Consolidation would not "avoid unnecessary cost or delay"; it would manufacture it.

**B.    Narrower Case Management Tools Are Available and Preferable.**

If Plaintiffs' real point is that some witnesses may overlap, the Court can address that with narrower tools: coordinated scheduling, a single deposition for overlapping witnesses with reasonable time accommodations, and/or a limited order coordinating document discovery on shared topics. Rule 42(a) expressly contemplates such "other orders" short of consolidation. Those options preserve any legitimate efficiencies while avoiding the unfairness and delay that full consolidation would create.

In the alternative, if the Court concludes some operational coordination is warranted, the less prejudicial mechanism is related-case treatment under the Southern District's Division of Business Rules, which permits coordination where "the interests of justice and efficiency will be served," but makes clear that cases are not related "merely because they involve common legal issues or the same parties." Rs. Div. Bus. 13(a)(1), 13(a)(2)(A). That approach would allow appropriate coordination without merging two distinct incidents into a single consolidated merits proceeding.

## <u>CONCLUSION</u>

Accordingly, given that the differences between these two actions outweigh their commonalities, and because consolidation would result in increased delay and be prejudicial to defendant City and the not yet joined defendants, consolidation is inappropriate and should be denied.

Dated:      New York, New York
            February 6, 2026

                                MURIEL GOODE-TRUFANT
                                Corporation Counsel of the City of New York
                                *Attorney for Defendant City of New York*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2670

                         By:    /s/ *John McLaughlin*
                                _____
                                John McLaughlin
                                *Assistant Corporation Counsel*
                                Special Federal Litigation

Cc:    **<u>VIA ECF</u>**
       *All counsel of record.*