# Exhibit D

*July Incident*

*DEF000212-270*
*50-H Hearing of Juan*
*Adonis Almonte Espinal*

**Claim:   2024PI031740**

**JUAN ADONIS ALMONTE ESPINAL**

DEF000212

| Attachments can contain viruses that may harm your computer. Attachments may not display correctly. |
| --- |

**GGARBER@GLENNGARBER.COM**

| | | | |
| --- | --- | --- | --- |
| **From:** | NYCComptrollerClaimSystem [DoNotReply@comptroller.nyc.gov] | **Sent:** | Tuesday 10/8/2024 2:41 PM |
| **To:** | GGARBER@GLENNGARBER.COM | | |
| **Cc:** | | | |
| **Subject:** | Claim receipt acknowledgment for claim number 2024PI031740 | | |
| **Attachments:** | AckLetterEmail.pdf | | |

Please find attached an acknowledgment letter for your claim.

***This email was sent from an unmonitored email account.  Please do not reply to this email.***

Sent from the New York City Office of the Comptroller. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.

***Please consider the environment before printing this email.***

DEF000213



www.comptroller.nyc.gov

**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

—————————————
**Brad Lander**
**COMPTROLLER**

015 - 151

Date:        10/8/2024
Claim Number:  2024PI031740
RE:        Acknowledgment of Claim
Your Claim/Policy#:

JUAN ADONIS ALMONTE ESPINAL  c/o  GARBER & GARBER
255 BROADWAY
NEW YORK NY 10007
GGARBER@GLENNGARBER.COM

Dear Claimant:

    We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

    We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

    If you have any questions regarding your claim, you may contact us at 212-669-4729 for claims involving personal injury.

    If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

                                    Sincerely,


                                    Bureau of Law & Adjustment

# eCLAIM Receipt

You have successfully filed your claim.

By successfully filing your claim, you have certified that all information provided is true and correct to the best of your knowledge and belief. You also understand that the willful making of any false statement of material fact herein may subject you to criminal penalties and civil liabilities.

Please allow up to 30 days to receive an email acknowledging your claim.

If you have any questions please contact 212-669-4729.

Your Receipt Number is the following:

**202400144302**

**You uploaded:**
Claim Form: 1
Supporting Documents:0

10/4/2024 2:58 PM
Claimant Last Name:ALMONTE ESPINAL
Claimant First Name:JUAN ADONIS

DEF000215



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

Form Version:    NYC-COMPT-BLA-PI1-E

# Personal Injury Claim Form

Electronically filed claims must be filed within 90 days of the occurrence using the Office of the NYC Comptroller's website. If the claim is not resolved within one (1) year and 90 days of the occurrence, you must start a separate legal action in a court of law before the expiration of this time period to preserve your rights.

**I am filing:**   ○ On behalf of myself.

○ On behalf of someone else. If on someone else's behalf, please provide the following information.

Last Name:

First Name:

Relationship to the claimant:

## Claimant Information

| | |
|---|---|
| *Last Name: | ALMONTE ESPINAL |
| *First Name: | JUAN ADONIS |
| *Address: | 2850 GRAND CONCOURSE |
| Address 2: | APT A22 |
| *City: | BRONX |
| *State: | NEW YORK |
| *Zip Code: | 10458 |
| *Country: | USA |
| Date of Birth: | Format: MM/DD/YYYY |
| Soc. Sec. # | |
| HICN: (Medicare #) | |
| Date of Death: | Format: MM/DD/YYYY |
| Phone: | |
| *Email Address: | GGARBER@GLENNGARBER.COM |
| *Retype Email Address: | GGARBER@GLENNGARBER.COM |
| Occupation: | |

City Employee?   ○ Yes   ○ No   ○ NA

Gender   ○ Male   ○ Female   ○ Other

○ Attorney is filing.

### Attorney Information (If claimant is represented by attorney)

| | |
|---|---|
| +Firm or Last Name: | GARBER |
| +Firm or First Name: | GLENN |
| +Address: | 233 BROADWAY |
| Address 2: | SUITE 2370 |
| +City: | NEW YORK |
| +State: | NEW YORK |
| +Zip Code: | 10279 |
| Tax ID: | |
| Phone #: | (212) 965-9370 |
| +Email Address: | GGARBER@GLENNGARBER.COM |
| +Retype Email Address: | GGARBER@GLENNGARBER.COM |

### The time and place where the claim arose

| | |
|---|---|
| *Date of Incident: | 07/06/2024   Format: MM/DD/YYYY |
| Time of Incident: | Format: HH:MM AM/PM |
| *Location of Incident: | INTERSECTION OF GRAND CONCOURSE, VALENTINE AVE & 198TH STREET, IN THE BRONX |

| | |
|---|---|
| Address: | |
| Address 2: | |
| City: | |
| *State: | NEW YORK |
| Borough: | BRONX |

*Denotes required fields.*
*+Denotes field that is required if attorney is filing.*
*A Claimant OR an Attorney Email Address is required.*

DEF000216



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**\*Manner in which claim arose:**

THE CLAIMS AROSE ON OR ABOUT BETWEEN 8PM ON JULY 6, 2024 AND 2 AM ON JULY 7, 2024, AND THEREAFTER, AT OR AROUND 198 GRAND CONCOURSE AND VALENTINE AVENE, BRONX, NEW YORK, WHEN MULTIPLE NEW YORK CITY POLICE DEPARTMENT ("NYPD") MEMBERS, INTER ALIA, UNLAWFULLY ASSAULTED, SEIZED, BATTERED, AND FALSELY ARRESTED CLAIMANTS, EMPLOYING UNREASONABLE AND EXCESSIVE FORCE, IN VIOLATION OF CLAIMANTS' RIGHTS.

THE EXACT NAMES AND IDENTITIES OF THE OFFICERS RESPONSIBLE ARE NOT CURRENTLY KNOWN, EXCEPT FOR THE FOLLOWING: OFFICER O'CONNOR, TAX ID. NO. 961018, JESELSOM, TAX ID. NO. 97112, AND SGT. PENA, OF THE 52 PRECINCT. THE SPELLING OF THE OFFICERS' NAMES AND THEIR TAX IDS ARE SUBJECT TO REVISION.

NYPD OFFICERS NAMED AND UNNAMED (HEREINAFTER NYPD OFFICERS OR OFFICERS) APPROACHED CLAIMANTS JUAN ADONIS ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL, AND JHOAN ALBERTO MARCHENA ON THE STREET AND DETAINED, HARASSED AND ARRESTED THEM FOR NO APPARENT REASON. THE NYPD OFFICERS DID NOT HAVE PROBABLE CAUSE, LAWFUL JUSTIFICATION, OR CONSENT FOR THE APPROACH, DETENTION OR ARREST. THE NYPD OFFICERS ASSAULTED THESE CLAIMANTS AND USED UNREASONABLE AND EXCESSIVE PHYSICAL FORCE AGAINST THEM.

DURING THE ARREST OF THE ABOVE-NAMED CLAIMANTS, CLAIMANTS ALISHA EMELY RODRIGUEZ, JUAN RAMON ALMONTE, ANA MARIA ESPINAL, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL CAME TO THE SCENE AND INQUIRED OF THE POLICE ABOUT WHAT WAS HAPPENING. WITHOUT PROBABLE CAUSE, LAWFUL JUSTIFICATION, OR CONSENT CLAIMANTS JUAN RAMONE ALMONTE, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL WERE ALSO ARRESTED BY NYPD OFFICERS. THE NYPD OFFICERS ASSAULTED THESE CLAIMANTS AND USED UNREASONABLE AND EXCESSIVE PHYSICAL FORCE AGAINST THEM.

CLAIMANTS JUAN ADONIS ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL, JHOAN ALBERTO MARCHENA, JUAN RAMON ALMONTE, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL WERE TAKEN TO THE 52ND POLICE PRECINCT, HELD FOR HOURS, DENIED MEDICAL CARE, AND FALSELY CHARGED WITH CRIMES. THESE CLAIMANTS APPEARED IN COURT AND THE CHARGES WERE LATER DISMISSED.

BASED UPON THE ABOVE EXPERIENCES, CLAIMANTS MAKES  CLAIMS FOR, INTER ALIA: FALSE IMPRISONMENT; FALSE ARREST; EXCESSIVE DETENTION; ASSAULT; BATTERY; EXCESSIVE FORCE; FALSE ARREST; ABUSE OF PROCESS; TRESPASS ON THE PERSON; TRESPASS TO CHATTELS; CONVERSION; WILLFUL DESTRUCTION OF PROPERTY; MALICIOUS PROSECUTION; MALICIOUS AND RETALIATORY PROSECUTION; INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE; NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND/OR TRAINING; DEFAMATION; DENIAL OF RIGHTS TO COMMUNICATE BY PHONE WHILE IN CUSTODY, INCLUDING UNDER NEW YORK CITY ADMINISTRATIVE CODE §§ 8-801 THROUGH 8-807 (THE RIGHT OF SECURITY AGAINST UNREASONABLE SEARCH AND SEIZURE AND AGAINST EXCESSIVE FORCE REGARDLESS OF WHETHER SUCH FORCE IS USED IN CONNECTION WITH A SEARCH OR SEIZURE); NEW YORK CRIMINAL PROCEDURE LAW § 140.20(7); VIOLATION(S) OF NEW YORK CRIMINAL PROCEDURE LAW §§ 150.20 AND 150.75; VIOLATION(S) OF CLAIMANT'S RIGHTS PURSUANT TO THE CONSTITUTION OF THE STATE OF NEW YORK, INCLUDING, BUT NOT LIMITED TO, ARTICLE I, SECTIONS 6 (DUE PROCESS AND RIGHT TO COUNSEL), 8 (FREEDOM OF SPEECH AND PRESS), 9 (RIGHT TO ASSEMBLE AND PETITION), 11 (EQUAL PROTECTION), AND/OR 12 (UNLAWFUL SEARCH AND SEIZURE) THEREOF; DENIAL OR DELAY OF MEDICAL CARE AND/OR MEDICATION (INCLUDING IN VIOLATION OF NEW YORK CIVIL RIGHTS LAW SECTION 28); VIOLATION(S) OF NEW YORK CRIMINAL PROCEDURE LAW §§ 160.50 AND 160.55; BIAS-BASED PROFILING AND/OR UNLAWFUL DISCRIMINATORY PRACTICES IN VIOLATION OF THE NEW YORK CITY COMMUNITY SAFETY ACT OF 2013 (LOCAL LAW 71); VIOLATION (S) OF THE NEW YORK STATE HUMAN RIGHTS LAW; VIOLATION(S) OF THE NEW YORK CITY HUMAN RIGHTS LAW; AND/OR VIOLATION(S) OF THE NEW YORK STATE CIVIL RIGHTS LAW.

CLAIMANTS MAKE THE CLAIMS THE CITY OF NEW YORK BASED ON A RESPONDEAT SUPERIOR THEORY OF LIABILITY, AS WELL AS AGAINST THE INDIVIDUAL NYPD MEMBERS WHO WERE INVOLVED IN VIOLATING, AND WHO FAILED TO INTERVENE TO PREVENT THE VIOLATIONS OF, CLAIMANTS' RIGHTS.

DEF000217



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY 10007

**The items of damage or injuries claimed are (include dollar amounts):**

AS DESCRIBED ABOVE, CLAIMANTS SUSTAINED INJURIES TO THEIR PHYSICAL AND EMOTIONAL WELL-BEING, AS WELL AS VIOLATIONS OF THEIR CONSTITUTIONAL, COMMON LAW, AND STATUTORY RIGHTS. CLAIMANTS ANA MIRANDA ALMONTE ESPINAL, JUAN FRAILYN ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL AND ALISH EMELY RODRIGUEZ WERE TREATED AT THE HOSPITAL FOR VARIOUS PHYSICAL INJURIES FROM BEING BEATEN AND MISTREATED BY THE OFFICERS.

CLAIMANTS ALLEGE THE FOLLOWING DAMAGES, AMONG OTHERS: COMPENSATORY DAMAGES FOR PAST AND/OR FUTURE EMOTIONAL AND PHYSICAL PAIN AND SUFFERING; COMPENSATORY DAMAGES FOR UNLAWFUL PHYSICAL RESTRAINT AND IMPRISONMENT; COMPENSATORY DAMAGES FOR VIOLATION(S) OF CLAIMANTS´ CONSTITUTIONAL RIGHTS; COMPENSATORY DAMAGES FOR LOSS OF PAST AND/OR FUTURE INCOME; COMPENSATORY DAMAGES FOR PAST AND/OR FUTURE MEDICAL EXPENSES; COMPENSATORY DAMAGES FOR OTHER ECONOMIC DAMAGES; DIVERSE GENERAL AND SPECIAL DAMAGES; ALL IN AMOUNTS OF FIVE MILLION DOLLARS PER CLAIMANT; AND PUNITIVE DAMAGES; AND/OR COMPENSATORY AND/OR PUNITIVE DAMAGES OTHERWISE DETERMINED BY A JURY.

CLAIMANTS ALSO DEMANDS THAT THE CITY OF NEW YORK, THE NYPD, AND THEIR EMPLOYEES, AGENTS, AND REPRESENTATIVES TAKE IMMEDIATE STEPS TO PRESERVE ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION (INCLUDING BUT NOT LIMITED TO ALL VIDEO FOOTAGE AND AUDIO RECORDINGS RELEVANT TO THE CLAIM, AND ALL METADATA ASSOCIATED THEREWITH), AND TANGIBLE THINGS RELEVANT TO THE CLAIMS OR DEFENSES RELATING TO THIS MATTER. CLAIMANTS DEMAND THAT THE CITY OF NEW YORK, THE NYPD, AND THEIR EMPLOYEES, AGENTS, AND REPRESENTATIVES PRESERVE EVIDENCE OR MATERIALS EXTENDS TO ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION OR OTHER TANGIBLE THINGS IN ANY FORM WHATSOEVER, INCLUDING, WITHOUT LIMITATION, WRITINGS, AUTHORIZATIONS, INSPECTIONS, NOTES, DRAFTS, PLANS, DRAWINGS, CHARTS, PHOTOGRAPHS, SOUND RECORDINGS, VIDEO RECORDINGS, IMAGES, EMAILS, INSTANT MESSAGES, VOICEMAILS, TEXT MESSAGES, COMPUTER FILES, FLASH DRIVES, HARD DRIVES, AND OTHER DATA OR DATA COMPILATIONS STORED IN ANY MEDIUM FROM WHICH INFORMATION CAN BE OBTAINED THAT ARE IN THE CITY OF NEW YORK´S OR THE NYPD´S POSSESSION, CUSTODY, OR CONTROL, OR IN THE POSSESSION, CUSTODY, OR CONTROL OF OTHERS UNDER THE CITY OF NEW YORK´S OR THE NYPD´S CONTROL OR AUTHORITY, INCLUDING THEIR AGENTS, MEMBERS, AND SERVANTS. THE DEMAND ALSO INCLUDES ANY RECORDS OF, AND RECORDS CONCERNING, E-MAIL, PHONE CALLS, SOCIAL MEDIA POSTINGS, AND TEXT MESSAGES.

CLAIMANTS PRESENT THE CLAIMS FOR ADJUSTMENT AND PAYMENT. YOU ARE HEREBY NOTIFIED THAT UNLESS IT IS ADJUSTED AND PAID WITHIN THE TIME PROVIDED BY LAW FROM THE DATE OF THE PRESENTATION TO YOU, CLAIMANTS INTEND TO COMMENCE AN ACTION ON THE CLAIMS

DEF000218



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**Medical Information**

1st Treatment Date: [            ]  *Format: MM/DD/YYYY*

Hospital/Name: [            ]

Address: [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]

Date Treated in Emergency Room: [            ]  *Format: MM/DD/YYYY*

Was claimant taken to hospital by an ambulance?  ○ Yes  ○ No  ○ NA

**Employment Information (If claiming lost wages)**

Employer's Name: [            ]

Address [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]

Work Days Lost: [            ]

Amount Earned Weekly: [            ]

**Treating Physician Information**

Last Name: [            ]

First Name: [            ]

Address: [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]

**Witness 1 Information**

Last Name: [            ]

First Name: [            ]

Address [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]  Phone: [            ]

**Witness 2 Information**

Last Name: [            ]

First Name: [            ]

Address [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]  Phone: [            ]

**Witness 3 Information**

Last Name: [            ]

First Name: [            ]

Address [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]  Phone: [            ]

**Witness 4 Information**

Last Name: [            ]

First Name: [            ]

Address [            ]

Address 2: [            ]

City: [            ]

State: [            ]

Zip Code: [            ]  Phone: [            ]

DEF000219



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**Complete if claim involves a NYC vehicle**

**Owner of vehicle claimant was traveling in**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:

**Insurance Information**

Insurance Company
Name:

Address

Address 2:

City:

State:

Zip Code:

Policy #:

Phone #:

**Non-City vehicle driver**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:

**Non-City vehicle information**

Make, Model, Year
of Vehicle:

Plate #:

VIN #:

**City vehicle information**

Plate #:

City Driver Last
Name:

City Driver First
Name:

**Description of claimant:**
○ Driver    ○ Passenger
○ Pedestrian    ○ Bicyclist
○ Motorcyclist    ○ Other

**Total Amount Claimed:**   $5,000,000.00

*Format: Do not include "$" or ",".*

*The **Total Amount Claimed** can only be entered once the following required fields are entered:*

*Claimant Last Name*
*Claimant First Name*
*Claimant Address,City,State,Zip Code, and Country*
*Claimant Email or Attorney Email*
*Date of Incident*
*Location of Incident (including State)*
*Manner in which claim arose*

*If attorney is filing, the following fields are also required:*
*Attorney Last Name, First Name, Address, City, State, Zip Code, Email*

*I certify that all information contained in this notice is true and correct to the best of my knowledge and belief. I understand that the willful making of any false statement of material fact herein will subject me to criminal penalties and civil liabilities.*

DEF000220

# eCLAIM Receipt

You have successfully filed your claim.

By successfully filing your claim, you have certified that all information provided is true and correct to the best of your knowledge and belief. You also understand that the willful making of any false statement of material fact herein may subject you to criminal penalties and civil liabilities.

Please allow up to 30 days to receive an email acknowledging your claim.

If you have any questions please contact 212-669-4729.

Your Receipt Number is the following:

**202400144302**

**You uploaded:**
Claim Form: 1
Supporting Documents:0

10/4/2024 2:58 PM
Claimant Last Name:ALMONTE ESPINAL
Claimant First Name:JUAN ADONIS

DEF000221



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

Form Version:    NYC-COMPT-BLA-PI1-E

# Personal Injury Claim Form

Electronically filed claims must be filed within 90 days of the occurrence using the Office of the NYC Comptroller's website. If the claim is not resolved within one (1) year and 90 days of the occurrence, you must start a separate legal action in a court of law before the expiration of this time period to preserve your rights.

**I am filing:**    ○ On behalf of myself.

○ On behalf of someone else. If on someone else's behalf, please provide the following information.

Last Name:

First Name:

Relationship to the claimant:

## Claimant Information

| | |
|---|---|
| *Last Name: | ALMONTE ESPINAL |
| *First Name: | JUAN ADONIS |
| *Address: | 2850 GRAND CONCOURSE |
| Address 2: | APT A22 |
| *City: | BRONX |
| *State: | NEW YORK |
| *Zip Code: | 10458 |
| *Country: | USA |
| Date of Birth: | Format: MM/DD/YYYY |
| Soc. Sec. # | |
| HICN: (Medicare #) | |
| Date of Death: | Format: MM/DD/YYYY |
| Phone: | |
| *Email Address: | GGARBER@GLENNGARBER.COM |
| *Retype Email Address: | GGARBER@GLENNGARBER.COM |
| Occupation: | |

City Employee?    ○ Yes    ○ No    ○ NA

Gender    ○ Male    ○ Female    ○ Other

○ Attorney is filing.

**Attorney Information (If claimant is represented by attorney)**

| | |
|---|---|
| +Firm or Last Name: | GARBER |
| +Firm or First Name: | GLENN |
| +Address: | 233 BROADWAY |
| Address 2: | SUITE 2370 |
| +City: | NEW YORK |
| +State: | NEW YORK |
| +Zip Code: | 10279 |
| Tax ID: | |
| Phone #: | (212) 965-9370 |
| +Email Address: | GGARBER@GLENNGARBER.COM |
| +Retype Email Address: | GGARBER@GLENNGARBER.COM |

### The time and place where the claim arose

| | |
|---|---|
| *Date of Incident: | 07/06/2024    Format: MM/DD/YYYY |
| Time of Incident: | Format: HH:MM AM/PM |
| *Location of Incident: | INTERSECTION OF GRAND CONCOURSE, VALENTINE AVE & 198TH STREET, IN THE BRONX |
| Address: | |
| Address 2: | |
| City: | |
| *State: | NEW YORK |
| Borough: | BRONX |

*** Denotes required fields.**
**+Denotes field that is required if attorney is filing.**
*A Claimant OR an Attorney Email Address is required.*



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY 10007

**\*Manner in which claim arose:**

THE CLAIMS AROSE ON OR ABOUT BETWEEN 8PM ON JULY 6, 2024 AND 2 AM ON JULY 7, 2024, AND THEREAFTER, AT OR AROUND 198 GRAND CONCOURSE AND VALENTINE AVENE, BRONX, NEW YORK, WHEN MULTIPLE NEW YORK CITY POLICE DEPARTMENT ("NYPD") MEMBERS, INTER ALIA, UNLAWFULLY ASSAULTED, SEIZED, BATTERED, AND FALSELY ARRESTED CLAIMANTS, EMPLOYING UNREASONABLE AND EXCESSIVE FORCE, IN VIOLATION OF CLAIMANTS' RIGHTS.

THE EXACT NAMES AND IDENTITIES OF THE OFFICERS RESPONSIBLE ARE NOT CURRENTLY KNOWN, EXCEPT FOR THE FOLLOWING: OFFICER O'CONNOR, TAX ID. NO. 961018, JESELSOM, TAX ID. NO. 97112, AND SGT. PENA, OF THE 52 PRECINCT. THE SPELLING OF THE OFFICERS' NAMES AND THEIR TAX IDS ARE SUBJECT TO REVISION.

NYPD OFFICERS NAMED AND UNNAMED (HEREINAFTER NYPD OFFICERS OR OFFICERS) APPROACHED CLAIMANTS JUAN ADONIS ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL, AND JHOAN ALBERTO MARCHENA ON THE STREET AND DETAINED, HARASSED AND ARRESTED THEM FOR NO APPARENT REASON. THE NYPD OFFICERS DID NOT HAVE PROBABLE CAUSE, LAWFUL JUSTIFICATION, OR CONSENT FOR THE APPROACH, DETENTION OR ARREST. THE NYPD OFFICERS ASSAULTED THESE CLAIMANTS AND USED UNREASONABLE AND EXCESSIVE PHYSICAL FORCE AGAINST THEM.

DURING THE ARREST OF THE ABOVE-NAMED CLAIMANTS, CLAIMANTS ALISHA EMELY RODRIGUEZ, JUAN RAMON ALMONTE, ANA MARIA ESPINAL, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL CAME TO THE SCENE AND INQUIRED OF THE POLICE ABOUT WHAT WAS HAPPENING. WITHOUT PROBABLE CAUSE, LAWFUL JUSTIFICATION, OR CONSENT CLAIMANTS JUAN RAMONE ALMONTE, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL WERE ALSO ARRESTED BY NYPD OFFICERS. THE NYPD OFFICERS ASSAULTED THESE CLAIMANTS AND USED UNREASONABLE AND EXCESSIVE PHYSICAL FORCE AGAINST THEM.

CLAIMANTS JUAN ADONIS ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL, JHOAN ALBERTO MARCHENA, JUAN RAMON ALMONTE, ANA MIRANDA ALMONTE ESPINAL, AND JUAN FRAILYN ALMONTE ESPINAL WERE TAKEN TO THE 52ND POLICE PRECINCT, HELD FOR HOURS, DENIED MEDICAL CARE, AND FALSELY CHARGED WITH CRIMES. THESE CLAIMANTS APPEARED IN COURT AND THE CHARGES WERE LATER DISMISSED.

BASED UPON THE ABOVE EXPERIENCES, CLAIMANTS MAKES CLAIMS FOR, INTER ALIA: FALSE IMPRISONMENT; FALSE ARREST; EXCESSIVE DETENTION; ASSAULT; BATTERY; EXCESSIVE FORCE; FALSE ARREST; ABUSE OF PROCESS; TRESPASS ON THE PERSON; TRESPASS TO CHATTELS; CONVERSION; WILLFUL DESTRUCTION OF PROPERTY; MALICIOUS PROSECUTION; MALICIOUS AND RETALIATORY PROSECUTION; INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENCE; NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND/OR TRAINING; DEFAMATION; DENIAL OF RIGHTS TO COMMUNICATE BY PHONE WHILE IN CUSTODY, INCLUDING UNDER NEW YORK CITY ADMINISTRATIVE CODE §§ 8-801 THROUGH 8-807 (THE RIGHT OF SECURITY AGAINST UNREASONABLE SEARCH AND SEIZURE AND AGAINST EXCESSIVE FORCE REGARDLESS OF WHETHER SUCH FORCE IS USED IN CONNECTION WITH A SEARCH OR SEIZURE); NEW YORK CRIMINAL PROCEDURE LAW § 140.20(7); VIOLATION(S) OF NEW YORK CRIMINAL PROCEDURE LAW §§ 150.20 AND 150.75; VIOLATION(S) OF CLAIMANT'S RIGHTS PURSUANT TO THE CONSTITUTION OF THE STATE OF NEW YORK, INCLUDING, BUT NOT LIMITED TO, ARTICLE I, SECTIONS 6 (DUE PROCESS AND RIGHT TO COUNSEL), 8 (FREEDOM OF SPEECH AND PRESS), 9 (RIGHT TO ASSEMBLE AND PETITION), 11 (EQUAL PROTECTION), AND/OR 12 (UNLAWFUL SEARCH AND SEIZURE) THEREOF; DENIAL OR DELAY OF MEDICAL CARE AND/OR MEDICATION (INCLUDING IN VIOLATION OF NEW YORK CIVIL RIGHTS LAW SECTION 28); VIOLATION(S) OF NEW YORK CRIMINAL PROCEDURE LAW §§ 160.50 AND 160.55; BIAS-BASED PROFILING AND/OR UNLAWFUL DISCRIMINATORY PRACTICES IN VIOLATION OF THE NEW YORK CITY COMMUNITY SAFETY ACT OF 2013 (LOCAL LAW 71); VIOLATION (S) OF THE NEW YORK STATE HUMAN RIGHTS LAW; VIOLATION(S) OF THE NEW YORK CITY HUMAN RIGHTS LAW; AND/OR VIOLATION(S) OF THE NEW YORK STATE CIVIL RIGHTS LAW.

CLAIMANTS MAKE THE CLAIMS AGAINST THE CITY OF NEW YORK BASED ON A RESPONDEAT SUPERIOR THEORY OF LIABILITY, AS WELL AS AGAINST THE INDIVIDUAL NYPD MEMBERS WHO WERE INVOLVED IN VIOLATING, AND WHO FAILED TO INTERVENE TO PREVENT THE VIOLATIONS OF, CLAIMANTS' RIGHTS.

*\* Denotes required field.*



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**The items of damage or injuries claimed are (include dollar amounts):**

AS DESCRIBED ABOVE, CLAIMANTS SUSTAINED INJURIES TO THEIR PHYSICAL AND EMOTIONAL WELL-BEING, AS WELL AS VIOLATIONS OF THEIR CONSTITUTIONAL, COMMON LAW, AND STATUTORY RIGHTS. CLAIMANTS ANA MIRANDA ALMONTE ESPINAL, JUAN FRAILYN ALMONTE ESPINAL, ERIK MANUEL ALMONTE ESPINAL AND ALISH EMELY RODRIGUEZ WERE TREATED AT THE HOSPITAL FOR VARIOUS PHYSICAL INJURIES FROM BEING BEATEN AND MISTREATED BY THE OFFICERS.

CLAIMANTS ALLEGE THE FOLLOWING DAMAGES, AMONG OTHERS: COMPENSATORY DAMAGES FOR PAST AND/OR FUTURE EMOTIONAL AND PHYSICAL PAIN AND SUFFERING; COMPENSATORY DAMAGES FOR UNLAWFUL PHYSICAL RESTRAINT AND IMPRISONMENT; COMPENSATORY DAMAGES FOR VIOLATION(S) OF CLAIMANTS´ CONSTITUTIONAL RIGHTS; COMPENSATORY DAMAGES FOR LOSS OF PAST AND/OR FUTURE INCOME; COMPENSATORY DAMAGES FOR PAST AND/OR FUTURE MEDICAL EXPENSES; COMPENSATORY DAMAGES FOR OTHER ECONOMIC DAMAGES; DIVERSE GENERAL AND SPECIAL DAMAGES; ALL IN AMOUNTS OF FIVE MILLION DOLLARS PER CLAIMANT; AND  PUNITIVE DAMAGES; AND/OR COMPENSATORY AND/OR PUNITIVE DAMAGES OTHERWISE DETERMINED BY A JURY.

CLAIMANTS ALSO DEMANDS THAT THE CITY OF NEW YORK, THE NYPD, AND THEIR EMPLOYEES, AGENTS, AND REPRESENTATIVES TAKE IMMEDIATE STEPS TO PRESERVE ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION (INCLUDING BUT NOT LIMITED TO ALL VIDEO FOOTAGE AND AUDIO RECORDINGS RELEVANT TO THE CLAIM, AND ALL METADATA ASSOCIATED THEREWITH), AND TANGIBLE THINGS RELEVANT TO THE CLAIMS OR DEFENSES RELATING TO THIS MATTER. CLAIMANTS DEMAND THAT THE CITY OF NEW YORK, THE NYPD, AND THEIR EMPLOYEES, AGENTS, AND REPRESENTATIVES PRESERVE EVIDENCE OR MATERIALS EXTENDS TO ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION OR OTHER TANGIBLE THINGS IN ANY FORM WHATSOEVER, INCLUDING, WITHOUT LIMITATION, WRITINGS, AUTHORIZATIONS, INSPECTIONS, NOTES, DRAFTS, PLANS, DRAWINGS, CHARTS, PHOTOGRAPHS, SOUND RECORDINGS, VIDEO RECORDINGS, IMAGES, EMAILS, INSTANT MESSAGES, VOICEMAILS, TEXT MESSAGES, COMPUTER FILES, FLASH DRIVES, HARD DRIVES, AND OTHER DATA OR DATA COMPILATIONS STORED IN ANY MEDIUM FROM WHICH INFORMATION CAN BE OBTAINED THAT ARE IN THE CITY OF NEW YORK´S OR THE NYPD´S POSSESSION, CUSTODY, OR CONTROL, OR IN THE POSSESSION, CUSTODY, OR CONTROL OF OTHERS UNDER THE CITY OF NEW YORK´S OR THE NYPD´S CONTROL OR AUTHORITY, INCLUDING THEIR AGENTS, MEMBERS, AND SERVANTS. THE DEMAND ALSO INCLUDES ANY RECORDS OF, AND RECORDS CONCERNING, E-MAIL, PHONE CALLS, SOCIAL MEDIA POSTINGS, AND TEXT MESSAGES.

CLAIMANTS PRESENT THE CLAIMS FOR ADJUSTMENT AND PAYMENT.  YOU ARE HEREBY NOTIFIED THAT UNLESS IT IS ADJUSTED AND PAID WITHIN THE TIME PROVIDED BY LAW FROM THE DATE OF THE PRESENTATION TO YOU, CLAIMANTS INTEND TO COMMENCE AN ACTION ON THE CLAIMS

DEF000224

 New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**Medical Information**

| 1st Treatment Date: | | *Format: MM/DD/YYYY* |
|---|---|---|

Hospital/Name:

Address:

Address 2:

City:

State:

Zip Code:

| Date Treated in Emergency Room: | | *Format: MM/DD/YYYY* |
|---|---|---|

Was claimant taken to hospital by an ambulance?   ○ Yes   ○ No   ○ NA

**Employment Information (If claiming lost wages)**

Employer's Name:

Address

Address 2:

City:

State:

Zip Code:

Work Days Lost:

Amount Earned Weekly:

**Treating Physician Information**

Last Name:

First Name:

Address:

Address 2:

City:

State:

Zip Code:

**Witness 1 Information**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:          Phone:

**Witness 2 Information**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:          Phone:

**Witness 3 Information**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:          Phone:

**Witness 4 Information**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:          Phone:

DEF000225



New York City Comptroller
Brad Lander

Office of the New York City Comptroller
1 Centre Street
New York, NY  10007

**Complete if claim involves a NYC vehicle**

**Owner of vehicle claimant was traveling in**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:

**Insurance Information**

Insurance Company Name:

Address

Address 2:

City:

State:

Zip Code:

Policy #:

Phone #:

**Non-City vehicle driver**

Last Name:

First Name:

Address

Address 2:

City:

State:

Zip Code:

**Non-City vehicle information**

Make, Model, Year of Vehicle:

Plate #:

VIN #:

**City vehicle information**

Plate #:

City Driver Last Name:

City Driver First Name:

**Description of claimant:**
○ Driver    ○ Passenger
○ Pedestrian    ○ Bicyclist
○ Motorcyclist    ○ Other

**Total Amount Claimed:**   $5,000,000.00    *Format: Do not include "$" or ",".*

*The **Total Amount Claimed** can only be entered once the following required fields are entered:*

*Claimant Last Name*
*Claimant First Name*
*Claimant Address,City,State,Zip Code, and Country*
*Claimant Email or Attorney Email*
*Date of Incident*
*Location of Incident (including State)*
*Manner in which claim arose*

*If attorney is filing, the following fields are also required:*
*Attorney Last Name, First Name, Address, City, State, Zip Code, Email*

*I certify that all information contained in this notice is true and correct to the best of my knowledge and belief. I understand that the willful making of any false statement of material fact herein will subject me to criminal penalties and civil liabilities.*

DEF000226

50-H HEARING

- - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Claim of

JUAN ADONIS ALMONTE ESPINAL

     -against-

THE CITY OF NEW YORK.

- - - - - - - - - - - - - - - - - - - - - - - -x

BLA#:  2024PI031740

                       VIDEO CONFERENCE
                       Conducted By:
                       LEX REPORTING SERVICE, INC.
                       160 Broadway

                       May 19, 2025
                       11:08 a.m.


     EXAMINATION of JUAN ADONIS ALMONTE

ESPINAL, held at the above time and place,

pursuant to Notice, taken before Linda Avery, a

stenographic reporter and Notary Public within

and for the State of New York.


                       Lex #205139



DEF000227

```
1                                                           2

2    A p p e a r a n c e s :

3

4         GLENN GARBER, ESQ.
                Attorney for Claimant
5               233 Broadway, Suite 2370
                New York, New York 10279
6               Ggarber@glenngarber.com

7

8

9

10        LEWIS BRISBOIS BISGAARD & SMITH, LLP
                Attorneys for Respondent
11              77 Water Street, Suite 2100
                New York, New York 10005
12        BY:   SHAWN CHOUDHURY, ESQ.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DEF000228

3

1

2          THE REPORTER:  This hearing is

3     being conducted via video

4     conferencing.  All parties present

5     are appearing remotely and are

6     confirming that they can hear and

7     see through the video without any

8     technical issues.  Would counsel

9     and the witness

10     please confirm?

11          MR. CHAUDHRY:  Confirmed.

12          MR. GARBER:  Confirm.

13          THE WITNESS:  Yes.

14          THE REPORTER:  Before I swear

15     in the witness, I will ask counsel

16     to stipulate on the record, that

17     the court reporter may swear in the

18     deponent even though they are not

19     in the physical presence of the

20     deponent, and that there is no

21     objection to that at this time, nor

22     will there be an objection to it at

23     a future date.

24          MR. GARBER:  No objection.

25          THE REPORTER:  Please note

DEF000229

```
1                                                    4
2              that this hearing is not being
3              recorded and shall not be recorded
4              by any participant hereto.
5   J U A N   A D O N I S
6   A L M O N T E  E S P I N A L, the witness
7              herein, having first been duly sworn
8              by a Notary Public of the State of
9              New York, was examined and testified
10             as follows:
11  EXAMINATION BY
12  MR. CHOUDHURY:
13         Q     State your name for the record,
14  please.
15         A     My name is Juan Adonis Almonte.
16         Q     State your address for the
17     record, please.
18         A     My address is 287 Grand
19  Concourse, Bronx, New York, apartment A2, ZIP
20  code 10458.
21              MR. GARBER:  Meanwhile, I am
22          here.  I just turned off my video
23          so that the stream might be better.
24         Q     Good morning, Mr. Almonte.  My
25     name is Shawn Choudhury.  I am going to
```

DEF000230

```
 1                    J. Almonte                    5
 2      be asking you a few questions with regard
 3      to an incident that happened last year,
 4      okay?
 5              MR. CHOUDHURY:  Is he frozen?
 6              MR. GARBER:  Adonis, are you
 7           there?
 8              THE WITNESS:  This internet is
 9           a little bit out here.
10              MR. GARBER:  Is there a way
11           you can maybe switch to data; do
12           you have data?
13              THE WITNESS:  Yeah, that's
14           what I'm going to do right now.
15              MR. CHOUDHURY:  So hopefully
16           it works then.
17      Q    Good morning.  My name is Shawn
18      Choudhury.  I am going asking u few
19      questions regarding an incident last
20      year.
21      A    Okay.  Good morning.
22      Q    If at any time you don't
23      understand any of my questions, just let
24      me know, and I will be happy to rephrase
25      it for you, okay?
```

DEF000231

```
1                    J. Almonte                    6
2        A       Okay.
3        Q       What's your date of birth?
4        A       April 17, 2000.
5                MR. CHOUDHURY:  And this is
6            off the record.
7                (There was an off-the-record
8            discussion.)
9        Q       The address that you gave,
10   Mr. Almonte, how long have you been
11   living there.
12       A       Like three years.
13       Q       Who do you live with there?
14       A       My mom, dad and a brother.
15       Q       What are their names?
16       A       My dad's name is Juan Almonte,
17   and my mother name is and Anna Espinal.
18   Do you want the name of my brother too?
19       Q       How old is your little brother?
20       A       He is 18 years old right now.
21       Q       What's his name?
22       A       Eric Almonte.
23       Q       Are you right-handed or
24   left-handed?
25       A       Right-handed.
```

DEF000232

```
 1                    J. Almonte                    7
 2        Q      What's your height and weight?
 3        A      Like 142 and six seven, I think
 4   it is -- I mean five-seven, five-eight.
 5        Q      Where were you born?
 6        A      Dominican Republic.
 7        Q      When did you come to the states?
 8        A      I don't remember well, but I
 9   think I came here when I was little.  I
10   think it was 2013 or 14, around there.
11        Q      What your highest level of
12   education?
13        A      I got to high school, I did
14   to -- I think, to eleventh, tenth grade.
15        Q      Any college or higher education
16   after that?
17        A      No.
18        Q      Do you have any licenses or
19   certifications for work?
20        A      No.
21        Q      Have you ever been convicted for
22   a crime?
23        A      Yeah.
24        Q      How many convictions have you
25   had?
```

DEF000233

```
 1                      J. Almonte                    8
 2          A      I think only one or two, I think
 3      there is.
 4          Q      When was the last conviction?
 5          A      I don't remember when it was
 6      now, but it was like --
 7          Q      You can approximate for me, you
 8      don't have to give me the exact date.
 9          A      It was like, six, seven months.
10          Q      And what was it conviction for?
11          A      I was with one of my friends and
12      they caught one of them with some pills
13      in the car -- so they already told me I
14      cannot be next to none of them --
15                 (Whereupon a discussion was
16              held off-the-record.)
17          A      Yeah, I was with my friend in
18      the car, and we was in the car.  We were
19      parking, then police came, and they find
20      like some pill in the car, and it was one
21      of my friends, but I was in the driver's
22      seat, and they tried to like put it like
23      it was mine.
24          Q      When was this conviction, seven
25      months ago?
```

DEF000234

```
1                        J. Almonte                      9
2        A      Yeah, like seven months ago.
3        Q      Did you serve any time as a
4    result of that conviction?
5        A      No.  I only did like 11 days in
6    jail, with everything that is going on
7    right now, too.
8        Q      And was this in New York?
9        A      Yeah, it was in New York.
10        Q      Which county?
11        A      Bronx, New York.
12        Q      And what was the other
13    conviction for?
14        A      That one I don't remember.  It
15    was super later with that, that was like
16    in 2017, 2018.
17        Q      But did you serve any time for
18    that, do you remember?
19        A      No, I didn't do time.
20        Q      Was that in New York as well?
21        A      Jersey, New Jersey.
22        Q      Other than this claim that we
23    are here for today have you made any
24    other claim against the City or State of
25    New York?
```

DEF000235

```
1                         J. Almonte                    10

2           A      No.

3           Q      Are you married?

4           A      No, I am not married.

5           Q      Do you have any children?

6           A      Yeah.  I have like a little

7      daughter, two months old.

8           Q      Back in July 6, 2024, were you

9      living at 2850 Grand Concourse?

10          A      Yeah.

11          Q      Are you currently working?

12          A      No, I cannot work right now.

13          Q      Why can't you work?

14          A      Because I am like basically

15     disabled because I got shot in any leg a

16     couple of years ago.

17          Q      Can you tell me very briefly

18     what happened?

19          A      If it's possible I would

20     actually not like to talk about that.

21                 MR. GARBER:  Shawn, I can fill

22            you in.

23                 We have a lawsuit pending

24            against the DEA, who shot Adonis in

25            2023.  There is a DEA shooting,
```

```
1                       J. Almonte                    11
2              where Adonis was shot.  Because we
3              have the other lawsuit pending, I
4              am not going to say anymore.
5         Q    Okay, but what about the leg
6    that you were shot in, which leg was
7    that?
8         A    Both of them.
9         Q    Both of them?
10        A    Yeah.
11             MR. CHOUDHURY:  And the reason
12             I am asking, Alex, is because I
13             just want to know if he is alleging
14             any lost income from the incident,
15             which is a year later from that
16             shooting?
17             MR. GARBER:  I don't believe
18             so because he hasn't been working.
19             MR. CHOUDHURY:  So let me just
20             clarify that one more time.
21        Q    Were you working on July 6,
22   2024?
23        A    No.
24        Q    Was that because of that
25   shooting the year before?
```

DEF000237

| | | |
|---|---|---|
| 1 | J. Almonte | 12 |

2      A      Yeah.

3      Q      Have you applied for disability

4   benefits?

5      A      No, I haven't applied for none

6   of that.

7      Q      How are you supporting yourself

8   currently?

9      A      My dad and my mother is giving

10   me some time to support myself, and the

11   girl that I have, that I have the baby

12   with, she's been helping me out.

13      Q      When you say you are disabled,

14   are you able to walk; tell me what's

15   wrong with you?

16      A      I can walk, but with difficulty,

17   but I be in pain or I be like, you know,

18   like, going to the side because it hurts

19   because of the pain.

20      Q      Do you use any assistive devices

21   to help you walk, for example, a cane, a

22   crutch or anything like that?

23      A      Right now, at the moment, I

24   haven't used nothing to be walking.  I

25   just use like a little bottle, some stick

DEF000238

J. Almonte                          13

they gave you to walk in the hospital.
That's the only thing I use because I be
in pain sometimes.

      Q      Are you alleging any lost income
due to this incident that happened on
July 6, 2024, the one that we are here
for today?

      A      That I have what?

      Q      Are you alleging any lost income
due to this arrest that we are going to
be talking about that happened on July 6,
2024?

      A      Not really because they
basically did almost like nothing to me.
They just like put me in handcuffs,
slammed me into the car, hit me with the
car and strike me like my back.  They
were just putting the handcuffs behind my
back and stuff like that.

                  MR. CHOUDHURY:  Let me
            rephrase the question.

      Q      Are you alleging that you lost
any time from work, and income due to
this incident?

DEF000239

```
 1                    J. Almonte                    14
 2        A       No, because I wasn't working at
 3   this moment.
 4        Q       That's what I was looking for.
 5   Thank you.  Do you have a driver license?
 6        A       No.
 7        Q       Back on July 6, 2024, did you
 8   have a driver's license?
 9        A       No, I don't have a license.
10        Q       Now, this incident it happened
11   on July 6, 2024, is that correct?
12        A       If I am not mistaken, yeah.
13        Q       Around what time did it happen?
14        A       Like around 6, 7 p.m. around
15   there.
16        Q       So there was still light out
17   outside right?
18        A       It was like a little bit light
19   because it got dark right away.
20        Q       Now, where did this happen?
21        A       It was in 198 and Valentine in
22   the Bronx, New York.
23        Q       What were you doing right before
24   this incident, at that location?
25        A       I was just charging my phone
```

DEF000240

```
1                    J. Almonte                    15
2       right there, sitting on the driver's
3       seat.
4           Q    Who was with you at the time of
5       the incident?
6           A    At the second one it was my
7       little brother and my other friends.
8           Q    Is that your little brother
9       Eric?
10          A    Yeah.
11          Q    And who was the other friends?
12          A    Jhoan.  Basically, he part of
13      our family, he's been with us his whole
14      life.
15          Q    Now, walk me through your day
16      that day, how did you meet up with Jhoan?
17          A    He always come like earlier, he
18      always come like around 2 p.m., 3 p.m.
19      Then he used to have like an Uber
20      account, so he used to connect to it, so
21      sometimes he used to be driving, we
22      usually like be picking up a couple
23      orders, we do, the delivery, so that day
24      he wake up and he brought to my mother
25      house.
```

DEF000241

```
 1                    J. Almonte                    16
 2              When he was in any mother house
 3        right there, he tell us:  Oh, we all
 4        outside with Eric, so I was like, okay,
 5        we can go outside because we got to pick
 6        up my girlfriend from work, who was
 7        working downtown, so I said, oh you, so
 8        you can drive, so I don't have a license.
 9              So we went, pick him up and when
10        we was waiting for him Downtown (sic).
11        She came out, we pick him up, we went
12        back.  We drive back to the same location
13        we was at, like through where I live at,
14        because I live on Grand Concourse and 198
15        and everything happened at 198 and
16        Valentine.
17              So when we got back there we
18        stopped there like the corner of
19        Valentine right there.
20              So he in front of the car and my
21        girl in front of the car.  He went to
22        like 99 cent store to buy something for
23        the house, and when she was inside, I sat
24        in the driver seat and I stayed there to
25        try to charge my phone.
```

DEF000242

1          J. Almonte                    17

2                   And while I was charging my

3          phone the police come and they, they --

4          at first they passed and they started

5          like, you know, like with their eyes and

6          like that and they was looking at,

7          checking me, you know, like body language

8          and stuff like that (indicating).  We

9          keep talking -- and body language back to

10         them too.

11                  So they keep going straight so

12         after we had like that incident that they

13         was looking at, they keep on going

14         straight.  So when they was going

15         straight from 198 and Grand Concourse,

16         they did like a U-ey, they came right

17         back again.  So when they come back

18         again, they hop out the car and said:

19         All of you need to get out of the car,

20         you cannot be here, this and that.  And I

21         was like why can't we be here, the car is

22         parked we are not even moving.

23         Q    Let me stop you there.

24                  So Jhoan comes to your home, and

25         then you guys go pick up Alisha, your

DEF000243

```
 1                      J. Almonte                18
 2      girlfriend?
 3          A      Yeah.
 4          Q      Now, what vehicle do you use to
 5      go pick her up?
 6          A      I was in my dad's car.
 7          Q      Is that a Honda?
 8          A      Yes, it's a Honda CRV.
 9          Q      And where did you pick up
10      Alisha, where downtown?
11          A      It was 39th street.
12          Q      And Park Avenue, is that
13      correct?
14          A      Yeah, Park Avenue.
15          Q      And who drove there, was it
16      Jhoan?
17          A      Jhoan, yes.
18          Q      And then after you picked up
19      Alisha, did you make any stops from
20      picking her up, up until the incident, or
21      no?
22          A      Not that I remember.  We didn't
23      make no stops.  We went straight to the
24      house and when she stopped at 99 cent
25      store to buy something for the house.
```

DEF000244

```
1                    J. Almonte                    19
2        Q      Now, when you picked up Alisha
3    who was driving back to the house?
4        A      It was Jhoan.
5        Q      When you say you stopped at a
6    corner store, who stopped the car, was it
7    Jhoan?
8        A      Yeah, it was Jhoan, I think it
9    was, if I am not mistaken.  Yeah, it was
10   Jhoan.
11       Q      And where did he stop the car;
12   was it a legal parking space, or was I
13   double-parked or somewhere else?
14       A      It was like, basically, it was
15   like a park, but at that time it was not
16   a park it was completely fixed.  So, you
17   see, like, on the corner, that little
18   space that you see, where somebody lives,
19   they park there and its like a little
20   space that stays there.  So there is
21   space and we parked the car right there.
22   But you see the back of the car, it was a
23   little bit out into the street so it was
24   like, not a good park.  They didn't say
25   nothing about the parking.  They just
```

DEF000245

J. Almonte                                    20

said, oh you have warrants, you have to

go to the precinct.  I was like how they

know we have warrants if you haven't even

wrote my name.

    Q    So were you parked in someone's

driveway?

    A    No, no, no, no.

    Q    Now, did Alisha go into the 99

cent store to get a key?

    A    She went int to 99 cent store to

to get like -- I think I was some shampoo

and other stuff there for the house.  I

don't remember too well what it was.

    Q    After Jhoan parked the car, did

he get out of the driver's seat and go

into the back seat?

    A    Yeah, no, that happened and I

hopped into driver seat because I was

charging my phone my phone right there,

like I say.  But the car was off, it's

not like the car was on, so.

    Q    That was my next question.  When

you were sitting in the driver's seat,

was the ignition on or off?

DEF000246

```
1                        J. Almonte                    21
2          A     Off, everything was off.
3          Q     And who was Jhoan sitting in the
4     back seat with.  Was it Eric?
5          A     Yeah, with Eric.
6          Q     After the police made a U-turn
7     and came back to you, did they tell you
8     will why they wanted you to get out of
9     the car?
10         A     No, they didn't tell me why.
11         Q     Did they ever mention that you
12    had a warrant?
13         A     They did mention that I had a
14    warrant, but without me giving them my
15    name.
16         Q     When did they first mention that
17    you had a warrant?
18         A     When they first came.
19         Q     I am sorry what was that?
20         A     When they first came, they said
21    you have a warrant.
22         Q     The vehicle, the Honda CRV, did
23    Jhoan have permission to drive it from
24    your dad?
25         A     Yeah.
```

DEF000247

```
 1                    J. Almonte                    22
 2          Q      Was the car in a legal park,
 3     space or no?
 4          A      It was not like a legal parking
 5     space, but it wasn't bothering nobody
 6     either.
 7          Q      Now when you say the police made
 8     a U-turn, how many police cars were
 9     there?
10          A      When they first came, it was two
11     of them.
12          Q      Were there two police cars or
13     two police officers?
14          A      No, two police cars.
15          Q      When they made the U-turn back
16     and told you to get out of the car, did
17     you get out of the car?
18          A      They didn't tell me to get out
19     of the car.  They have told me that I had
20     a warrant, so that if I don't get out the
21     car, they was going to take me out.  So I
22     was like wait, hold up man I'm not trying
23     to go through all this, I'm going to get
24     out myself.  That is when I get out right
25     there because they were acting a little
```

DEF000248

```
1                    J. Almonte                    23
2       rude and when I get out there is no
3       reason for him to to throw me into the
4       car and push me into the car.
5            Q      Did you get out on your own?
6            A      Yeah, I got out on my own.
7            Q      Then what happened after you got
8       out?
9            A      When I got out on my own, he
10      start like pushing me into the car and
11      stuff like that.  So he put the handcuffs
12      on me, and when he put the handcuffs on
13      me Alisha was coming out, my girl, she
14      was coming out the 99 cent store, and
15      when she start to pull out her wallet
16      inside, her other wallet that was inside
17      the car because it was a bigger wallet,
18      when they saw her, they pushed her and
19      that's when I told the officer you have
20      don't have to push her, she's pregnant
21      and then right there he slammed me into
22      the car.  He told me, you don't even
23      gotta talk.  And I said why are you
24      taking me and why are you taking them
25      too?  He said I can, I can do whatever I
```

DEF000249

1                          J. Almonte                    24

2       want to do.

3            Q      Before this date, did you ever

4       have interaction with these police

5       officers, did you know them?

6            A      This is all the time, man.  Even

7       yesterday I got arrested.  I tell you

8       like yesterday, like, around three, 4

9       p.m. I got arrested, by the same cops,

10      while doing nothing there.

11           Q      What precinct are they from?

12           A      The 52 precinct.  And everywhere

13      that they see us, they stop us, just

14      start harassing.  I got like crazy -- on

15      video of them harassing us.

16           Q      What about before July 6, 2024,

17      did you have issues with these police

18      officers?

19           A      Yeah.

20           Q      Do you know their names or badge

21      information?

22           A      I don't know their names like

23      that, but I can get it, all their badge

24      and name numbers because I had it.

25           Q      Now, this incident that happened

DEF000250

J. Almonte                              25

1
2      on July 6, did you take any photos or

3      videos?

4          A     Yeah, but it was on my phone

5      that I arrested with, and I never got

6      that phone back.

7          Q     Do you know if anyone else took

8      my photos or videos.

9          A     Yeah, my family do have video

10     photographs.  My girlfriend too, she has

11     a big video and picture.

12         Q     They didn't arrest Alisha,

13     correct?

14         A     No, but they was about to arrest

15     them, until I told them that she was

16     pregnant.

17         Q     Did they arrest rest Eric and

18     Jhoan?

19         A     Yeah, they arrest Eric, Jhoan,

20     my dad and my other little brother.

21         Q     That's Juan *****?

22         A     Yeah.

23         Q     And your mom came to the scene

24     as well, correct?

25         A     Yeah.

DEF000251

1                          J. Almonte                    26

2          Q       As a result of the arrest and

3     the handcuffing were you physically

4     injured in anyway?  I'm going to ask you

5     about mental health later, but I'm just

6     asking you specifically if you were

7     injured?

8          A       No, not really, not injured.

9          Q       After they arrested you, did

10    they takes you to the precinct?

11         A       Yeah, they took me to the

12    precinct.

13         Q       At any point, did anyone read

14    you your Miranda rights?

15         A       To be honest, I don't think they

16    did read me my Miranda rights when I was

17    there.

18         Q       When the police officers first

19    approached you, while you were in the

20    driver's seat was the music on?

21         A       No, there was no music.

22         Q       Was anyone smoking in the car?

23         A       No, there was nobody smoking in

24    the car.

25         Q       Were the windows down when the

DEF000252

```
1                      J. Almonte                27
2      police first approached or did they tell
3      you to put the windows down?
4           A    No, they were like half way
5      down.
6           Q    From the precinct did they take
7      you to Central Booking?
8           A    Yeah, they did.
9           Q    And did you see a judge?
10          A    Yeah, I did saw the judge.
11          Q    Did you have a public defender
12     or private attorney?
13          A    No, I had a private one.
14          Q    I am sorry have what was that?
15          A    That I had a private one.
16          Q    Who was your private attorney?
17          A    Glen, that would be Glen.
18          Q    How much, in total, have you
19     spent on attorney fees for this case?
20          A    I don't know, to be honest, it
21     was my mother taking care of all of that.
22          Q    You can give me an
23     approximation, that's fine?
24          A    Probably like $7000, $8000.
25          Q    What were you being charged with
```

DEF000253

```
 1                    J. Almonte                    28

 2   when you saw the judge?

 3       A      They just charged me with the

 4   warrant I had.  They didn't charge me

 5   with nothing else.

 6       Q      At any point, whether it was at

 7   the precinct or Central Booking, did

 8   anyone tell you what the warrant was for?

 9       A      First, when I got to the

10   precinct they were telling me that I had

11   some warrants because I didn't show up to

12   court.  Then all of them, I mean, all of

13   the officers were telling me oh, no, you

14   have some warrants because you got caught

15   with a gun, then I was like, what you man

16   I got caught with a gun.  I never had

17   gun.  Then I had an officer telling me,

18   you had to go to court to see to go see a

19   judge and then they're going to send you

20   to Rikers Island until they figure out

21   what they are going to do with you.

22       Q      After you were arrested did they

23   search you?

24       A      Yeah, they have did search me.

25       Q      Did they find anything, a weapon
```

DEF000254

```
1                          J. Almonte                    29

2        contraband or drugs?

3            A      No, they didn't find anything.

4            Q      Did they search the Honda CRV?

5            A      Yeah, they did.  They even took

6        the Honda CRV.

7            Q      Did they had find anything in

8        the Honda CRV?

9            A      No.

10           Q      Did they ask anyone for

11       permission to search the Honda CRV?

12           A      They didn't ask nobody for

13       permission.  Everything they said was, we

14       can do whatever we want to do.

15           Q      After you saw the judge are you

16       released or were you remanded to Rikers

17       Island?

18           A      The judge released me, but I

19       don't know what happened there, but may

20       sent me back to Rikers Island.

21           Q      Did you have to pay any bail?

22           A      Not that I know.  My lawyer,

23       like he tried to like speak again with

24       again with the judge that see me and get

25       me the release, and then she called again
```

DEF000255

J. Almonte                           30

1

2    and tried communicating to me again.  I

3    was supposed to get out the same week and

4    I didn't get out because they wasn't

5    trying to let me out.

6        Q    Was it because of this warrant

7    issue or warrant issues.

8        A    Yeah, but the judge already told

9    them to let me out because the warrant I

10   have, it was for some ticket that I have

11   in Jersey.

12       Q    So how long were you at Rikers

13   for?

14       A    Eleven days.

15       Q    So when were you ultimately

16   ultimately released?  Was it July 17th?

17       A    Yeah, it was July.  The 18th, I

18   think it was.

19       Q    So is it fair to say that you

20   were detained for a total of 11 to 12

21   days?

22       A    Yes.

23       Q    At any point during you time at

24   the precinct, Central Bookings, and

25   Rikers did you ask for any medical

DEF000256

```
 1                    J. Almonte                    31
 2      attention?
 3            A      Yeah, I did.
 4            Q      For what purpose?
 5            A      At that moment, I was suffering
 6      because my leg, because I was getting no
 7      medication there.
 8            Q      Were you provided medical
 9      attention?
10            A      No, they didn't give me no
11      medication.
12            Q      When did you ask for medical
13      attention, the first time?
14            A      When I first got into Rikers
15      Island.  The last two or three days I
16      think it they called to give me
17      medication but they only gave me like a
18      little thing, it's like four or five
19      pills like to go to sleep.  I wasn't even
20      medication, it was to go to sleep.
21            Q      Are you required to take
22      medication on a daily basis for your
23      legs?
24            A      Yeah.
25            Q      What do you take?
```

DEF000257

1                          J. Almonte                    32

2           A       Right now, at the moment I ain't

3      taking nothing because I was trying to

4      the doctor and stuff like that.  I don't

5      like the dealing with the doctors after I

6      got shot, I got a little trauma and stuff

7      like that, but they been going me some

8      OxyContin.

9           Q       What happened after you were

10     released, did you have to appear in court

11     again for this case?

12          A       No, I don't have to go.  They

13     dismissed the case.

14          Q       When did they dismiss the case?

15          A       I don't exactly remember when

16     they did because I never went back to

17     court.

18          Q       Did they dismiss the case out

19     right or did you have to do community

20     service or was it an adjournment

21     contemplating dismissal, if you know?

22          A       No, I didn't do no community

23     service.  They just dismissed the case.

24              MR. CHOUDHURY:  Off the

25          record.

DEF000258

```
1                    J. Almonte                      33
2                 (Whereupon a discussion was
3             held off-the-record.)
4                 MR. CHOUDHURY:  Ok, back on.
5          Q     After your release, did you seek
6      any medical attention for this incident?
7          A     Not for that incident, but I did
8      went to the doctor to get my medication
9      and stuff like that.
10         Q     What doctor do you see for your
11     leg?
12         A     It was in Montefiore.  I forgot
13     the name of the doctor because I be
14     changing them.  But it was a doctor that
15     was checking me at Montefiore, like
16     around my house.
17         Q     What kind of health insurance do
18     you have?
19         A     What, what?
20         Q     What kind of health insurance do
21     you have?
22         A     Medicaid.
23         Q     Do you know if you have an
24     insurer with that, is it Healthfirst?
25         A     Healthfirst, I think.
```

DEF000259

J. Almonte                    34

1

2      Q      Has this incident affected your

3      mental health in any?

4      A      To be honest, yeah, it did

5      because remember, I came from something

6      that happened super strong like in 2023,

7      so then I get arrested by the police.  I

8      was about -- at one point I couldn't see

9      police, I was not going to the doctor

10     because I didn't want to see no doctors.

11     I didn't want to see no police talking to

12     me, so yes, it is trauma So when this

13     happened again, it bring all the old

14     memories back, it bring everything back

15     to my mind.  It mad made me feel like if

16     I am always there, in the same spot again

17     where they shot me.

18     Q      Have you received any treatment

19     for mental health, have you seen a

20     therapist, doctor or anyone like that?

21     A      Yeah, I taking therapy and stuff

22     like that.

23     Q      You are?

24     A      Yeah, right now at the moment,

25     yeah.

DEF000260

```
1                        J. Almonte                        35
2          Q      Who do you see?
3          A      Right now, I just started so I
4     haven't seen the first therapy for mental
5     health.  It might see -- I think it is,
6     Tuesday or Wednesday.
7          Q      Who are you seeing, what's the
8     name of the doctor or provider?
9          A      The doctor that I am seeing for
10    the therapy?
11         Q      Yes.
12         A      Joanna Olivares.
13         Q      Before incident have you ever
14    had issues with mental health?
15         A      No.
16         Q      Is it the first time you are
17    seeing someone for mental health?
18         A      Yes, This is the fishes time.
19         Q      Have you ever taken any
20    medication for mental health?
21         A      No.
22         Q      Do you have any outstanding
23    medical bills due to this incident?
24         A      Not that I know of, to be
25    honest.
```

1          J. Almonte                    36

2          Q    Other than making this claim did

3    you file a complaint with the CCRB or IAB

4    against any of these police officers?

5          A    The police officers that shot me

6    or the police officers from this case?

7          Q    From this case?

8          A    Um, I started -- like I talked

9    to the sergeant and everything.  And my

10   girl went to the sergeant, too and she

11   made the complaint.  She even called 311

12   to make a complaint too, and some

13   detectives went to my house to speak with

14   her, and stuff like that we didn't speak

15   with none of them because we got a

16   private lawyer.  So everything happened

17   we let him know what is going on, you

18   know.  So we let him know, he said did

19   not speak with them about it, and tell

20   them that if they got something to speak

21   with us, then call my lawyer.  That's it,

22   that's everything we told them and they

23   leave.

24         Q    Because of the issues with your

25   mental health are there things that you

DEF000262

J. Almonte                                    37

```
 1
 2    can no longer do, that you were able to
 3    do before this incident?
 4        A    What happened to me after this
 5    incident.  Everything that happened to me
 6    because of this.
 7        Q    The police officers that
 8    arrested you on July 6th, you said you
 9    had an interaction with them just
10    yesterday, as well?
11        A    Yeah.
12        Q    Did they mention the July 6th
13    incident with you yesterday?
14        A    No, they didn't speak about
15    that.  But everywhere they see us, they
16    be laughing as if it is joke, like it is
17    something funny.
18        Q    When you say us, do you mean you
19    and your family.
20        A    Yeah, everybody be laughing like
21    we are a joke.
22        Q    Right before your arrest on July
23    6th, did you consume any alcohol in the
24    last 24 hours?
25        A    No.
```

DEF000263

| | J. Almonte | 38 |

1                J. Almonte            38

2     Q    Did you take any drugs in the

3  last 24 hours before your arrest?

4     A    No.

5     Q    Did you have that stick or cane

6  with you on July 6th, or no?

7     A    Yeah, it was in the car.  I

8  didn't have it with me, but it was in the

9  car.

10    Q    Do you have a limp or anything

11  like that when you walk?

12    A    Yeah, I had something to help me

13  walk and stuff like that.

14    Q    What happened with those alleged

15  warrants, do you know?

16    A    For the warrants I have?

17    Q    Yes?

18        (Continued on next page to

19     accommodate jurat.)

20

21

22

23

24

25

DEF000264

| | |
|---|---|
| 1 | J. Almonte                                    39 |

```
 1                      J. Almonte                    39

 2         A       They dismissed everything.

 3         Q       I believe you said they

 4      dismissed everything, if I am not

 5      mistaken; is that correct?

 6         A       Yeah, correct.

 7                 MR. CHOUDHURY:  All right,

 8            sir, thank you for your time.

 9                 THE WITNESS:  You are welcome.

10                      -oOo-

11                 (The examination of Juan

12         Adonis Almonte Espinal was

13         concluded at 11:46 a.m.)

14

15         _____

16          JUAN ADONIS ALMONTE ESPINAL

17

18      Subscribed and sworn to
        before me this _____ day
19      of _____, 20__.

20
        _____
21      Notary Public

22

23

24

25
```

DEF000265

40

# C E R T I F I C A T E

I, Linda Avery, a reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness(es) whose testimony is hereinbefore set forth was duly sworn by me, and the foregoing transcript is a true record of the testimony given by such witness(es).

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.


_Linda Avery_
LINDA AVERY

DEF000266



77 Water Street, Suite 2100
New York, New York 10005

January 31, 2025

Via Email: daguirre@glenngarber.com
Garber & Garber
233 Broadway, Suite 2370
New York New York 10279

      Re: Claimant Name: JUAN ADONIS ALMONTE ESPINAL
         Claim Number:  2024PI031740
         D.O.I      : 07/06/2024

### NOTICE OF ADJOURNMENT

Dear Counselor:

This is to confirm the hearing for the above referenced claim has been adjourned and has been rescheduled for the following location and time:

**Date of Hearing:**    May 7, 2025
**Time of Hearing:**    10:00 A.M.
**Location of Hearing:**  Remote

Please note, as stated in the Notice of Hearing correspondence, claimant is permitted only one adjournment without cause. Applications for all additional adjournments must include the reason for the request and will be granted for good cause only. Applications for adjournments must be made in writing to *Toni.Colucci@LewisBrisbois.com.*

Upon receipt of this notice, please contact us if a language interpreter for your client is necessary. One day prior to the hearing, we will call your office to confirm the date and time of the hearing. If you confirm the hearing date at that time and you subsequently fail to appear for the hearing, you will be charged by the City for any legal fee, interpreter fee and stenographic fee incurred.

---

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

DEF000267

All questions with regard to this notice should be addressed to the undersigned at *Toni.Colucci@LewisBrisbois.com*

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law**.

Very truly yours,
*Toni Colucci*

Toni Colucci
Case Assistant

cc: Comptroller's Office
    One Centre Street
    New York, New York 10007

DEF000268



77 Water Street, Suite 2100
New York, New York 10005

January 2, 2025

Garber & Garber
233 Broadway, Suite 2370
New York New York 10279

Re: Claimant Name: JUAN ADONIS ALMONTE ESPINAL
Claim Number:  2024PI031740
D.O.I            :  07/06/2024

**NOTICE OF 50-H HEARING**

Dear Counselor:

Please take notice, pursuant to Section 50-h of the General Municipal Law (GML), claimant is mandated by law to appear at the following location, at the date and time specified below, to be orally examined under oath relative to the occurrence and extent of injuries for which the above claim is made.  Please note that all infant claimants must appear.

**Date of Hearing**: March 20, 2025
**Time of Hearing**: 11:30 A.M.
**Location of Hearing**: Remotely

All 50-h hearings are being held by videoconference.  All parties must have access to a smart device with internet connection to support video capabilities, and all devices must be adequately charged.

The claimant should be accompanied by his/her attorney, if represented.  Please note that all claimants, including infants, must appear.  The hearing will begin promptly at the time indicated.

Upon receipt of this notice, please contact us if a language interpreter for your client is necessary. One day prior to the hearing, we will call your office to confirm the date and time of the hearing.  If you confirm the hearing date at that time and you subsequently fail to appear for the hearing, you will be charged by the City for any legal fee, interpreter fee and stenographic fee incurred.  For claimants not represented by an attorney, please note that we **cannot conduct a hearing** unless we confirm with you **by phone** the business day before. Please contact us immediately and provide us with your telephone number.

---

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA

MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA

OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

All applications for adjournments should be directed via email to **Toni Colucci** at **Toni.Colucci@LewisBrisbois.com**.

Claimants will be permitted one adjournment without cause. Application for such adjournments should be made <u>at least</u> one week prior to the hearing date. Applications for additional adjournments must include the reason for the request and will be granted for good cause **only.**

If a claimant fails to appear for a scheduled hearing, a default will be declared and claimant's failure to appear will be raised as an affirmative defense in any lawsuit subsequently filed.

**<u>In order to prevent fraud, you are required to present proper identification prior to commencement of the hearing</u>**. Additionally, you are requested to bring to the hearing original photographs of the accident scene and copies of all documents relevant to this claim including but not limited to:

(1) prior written notice map;
(2) all medical and hospital records;
(3) authorizations for the Comptroller's Office to obtain, as applicable, medical, criminal, employment and/or school records, and loss of income documentation;
(4) police reports.

Pursuant to State and Federal law, the Comptroller's Office, through its attorneys taking hearings, is authorized to obtain, social security and Medicare or Medicaid numbers for tax and reporting purposes, and to allow for the collection of liens held by the City and State.

Please be advised that nothing contained herein shall be construed as extending the statute of limitations beyond the statutory time.

All questions with regard to this notice should be addressed to the undersigned at Lewis Brisbois Bisgaard & Smith, LLP, 77 Water Street, Suite 2100 New York New York 10005.

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

Very truly yours,
*Toni Colucci*

Toni Colucci
Case Assistant
646 – 783 - 0928

cc: Comptroller's Office
One Centre Street
New York, New York 10007

---

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

www.lewisbrisbois.com

128775703.2

DEF000270