# GLENN A. GARBER, P.C.
## ATTORNEYS AT LAW

233 BROADWAY, SUITE 2370, NEW YORK, NY 10279

TEL: 212-965-9370   FAX: 212-965-9375
www.glenngarber.com

February 20, 2026

**By ECF**
Honorable Judge Paul Engelmayer
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

      Re:    Reply to Defendant's Opposition to Motion to Consolidate Dockets 25-CV-04100-KPE and 25-CV-05089-KPF

Dear Judge Engelmayer,

      Plaintiffs submit this letter memorandum in lieu of a formal memorandum of fact and law in reply to the City's opposition to Plaintiff's motion to consolidate.

      Defendants present two main arguments to oppose Plaintiffs' motion: 1) that the actions do not present common questions of law and fact, and 2) that the Defendants would suffer prejudice if both events were presented at the same trial. Both arguments fail.

      First, the common players in both cases alone is grounds for consolidation. Erick Almonte is a Plaintiff in both the July 6 and November 11 cases. Officers Jeselson and Lopez-Martinez are main players in both cases. Juan Adonis Almonte and Jhoan Marchena are both Plaintiffs in the July 6 case and are both witnesses to the November 11 event. The overlap between the parties is extensive and merits consolidation. *See, e.g.*, *City of New York v. Fedex Ground Package Sys., Inc.*, 2016 WL 1532252 (S.D.N.Y. Apr. 15, 2016)(consolidating two cases when "cases concern the same plaintiffs, same defendant, and near-identical allegations").

      Second, the City essentially argues that the two cases have no bearing on each other and therefore do not present common issues of law and fact. That could not be further from the truth. The two cases are intimately related factually.

      While admissibility of the July 6 incident at a trial on the November 11 incident need not be decided at this juncture, projecting the case through a 404(b) lens further elucidates why consolidation is appropriate.[1]

---

[1] The arguments raised by defendants compel us to at least address the relevance and probative value of the cases to each other, as well as the potential prejudice. That is best done through the lens of FRE 404(b).

1

Under FRE 404(b)(2), a prior bad act is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." If the evidence is probative of a proper purpose, it will only be excluded if the prejudicial effect substantially outweighs the probative value of the evidence. FRE 403.

In the excessive force case of *Griffin v. Village of Southampton*, 2018 WL 2272762 (E.D.N.Y., 2018), the Court held that police officer Defendants were permitted to elicit evidence of Plaintiff's prior criminal interactions of which the officers were aware because it directly informed the officer's state of mind when interacting with Plaintiff and what type of force would be reasonable to restrain him. *Id.* at p. 2 (citing *Hubbard v. Gross*, 199 Fed.Appx. 433, 444 (6th Cir. 2006) and *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995)). Notably, the police officer Defendants in *Griffin* ***were not even involved in the prior arrests of Plaintiff*** and yet those prior arrests were still held to be relevant to the Defendants' state of mind and the reasonableness of the force used.

In this case, Officers Jeselson and Lopez-Martinez were ***directly involved*** in the July 6 incident, and that incident is clearly relevant and probative of the officers' motive and state of mind on November 11. The July 6 incident also explains why Erick was fearful when the police started following him and why he attempted to flee. As such, the two incidents are intimately related, and the November 11 incident is most fairly and effectively recounted with detailed reference to the July 6 incident.[2]

Virtually every ground for admissibility under Rule 404(b) will likely be satisfied come trial, thus showing the commonality of law and fact between the cases.

### Motive

The July 6 incident provides a clear explanation for why Officer Jeselson acted so aggressively and irrationally on November 11. On July 6, Jeselson, Lopez-Martinez and numerous other officers were involved in a heated verbal confrontation with the Almonte family including Erick Almonte. Then, as Plaintiffs allege and the video shows, Jeselson and other officers escalated a contentious situation to a violent and dangerous one primarily by attacking Ana Miranda and Juan Fraylin.[3] After the incident, members of the Almonte family including Erick interacted for minutes with Officers Jeselson and Lopez-Martinez outside the police precinct and complained about how they were treated on that day.[4] Thus, after July 6, Officers Jeselson and Lopez-Martinez were very familiar with the Almonte family and with Erick in particular.

---

[2] In addition to this analysis of the relevance and probative value of the cases to each other, we reaffirm the six points of commonality argued in our initial motion. P. 7-9.

[3] BWC DEF 000331 (Plaintiff's Exhibit E) at start of video; DEF 00323 (Plaintiff's Exhibit F) at 0:38 seconds; BWC DEF 000365 (Plaintiff's Exhibit G) at 0:50 seconds.

[4] BWC DEF 000332 (Plaintiff's Exhibit H).

Plaintiffs plan to argue that the July 6 incident caused Lopez-Martinez and Jeselson to become familiar with and develop an animus toward the Almonte family and that it provides a clear reason for why they targeted Erick on November 11 and why Jeselson acted so violently toward Erick and Gabriel.

As Plaintiffs allege, on November 11, Erick was riding a Citi bike on Grand Concourse in the Bronx when, for no reason, a police car began to follow him.[5] Erick was afraid and started riding his bike toward the family apartment on 198th street. Officers Jeselson and Cruger then began running after Erick on foot, followed him to the apartment building, and tackled him to the ground.[6] It should be noted that in their opposition, the City makes many factual assertions and denies many of Plaintiff's allegations. The City does not provide any reason for why the police began following Erick in their vehicle and why they chased after him on foot. The lack of explanation certainly informs Defendants' motive.

Plaintiffs plan to argue that Defendants Jeselson and Lopez-Martinez recognized Erick from the July 6 incident and that is why they targeted and began following him. That recognition also explains why the police chased after Erick and not the other two individuals riding on Citi bikes. Their recognition of and animus towards Erick explains everything that happens next. It explains why Jeselson so aggressively grinded Erick's face into the pavement. It explains why Jeselson so aggressively and violently attacked Gabriel. While Jeselson may not have known that Gabriel was a member of the Almonte family in that moment, Gabriel was clearly defending Erick and thus incurred Jeselson's ire.

Defendants are free to deny this motive. But clearly, the July 6 incident is a plausible motive for the officers targeting Erick and assaulting him and Gabriel on November 11. Because the July 6 incident is relevant of defendant's motive for the November 11 incident, Plaintiffs would seek to elicit a detailed recitation of the July incident at the November 11 trial. This alone is a significant commonality of law and fact relevant to both cases.

### Intent/Lack of Justification

Based on Defendant's opposition, it appears that they plan to argue that Jeselson was somehow justified in using force against Erick and Gabriel and that he did not intentionally assault them. Def. opp. at p. 7. If Jeselson recognized and had an animus towards Erick and the Almonte family, that would advance our proof on intent.

### The July 6 incident informed Erick's State of Mind

As Plaintiffs allege, Erick fled from the police on his Citi bike because he was concerned about the police acting violently and aggressively. The July 6 incident directly informs Erick's state of mind and explains why he fled. A typical juror would not look kindly upon a Plaintiff

---

[5] In the complaint, Plaintiffs asserted that Erick was followed by an unmarked police car. The preliminary discovery reviewed by Plaintiffs indicates that the car was marked.

[6] Officer Cruger BWC Video, Bates no. DEF 000003, Def. Exhibit N.

who flees from the police for no reason. The July 6 incident provides an obvious and acceptable reason for why Erick fled on November 11.

## Conclusion

As we stated in our initial motion, any prejudice to the Defendants is of their own making and the product of their conscious decisions to participate in assaults of the Almonte family on two separate occasions. In any event, any threat of prejudice is substantially outweighed by judicial economy and the merits of consolidation. *See, e.g.*, *Brown v. Whitley*, WL 21781441 (E.D.N.Y. Oct. 4, 2022), *report and recommendation adopted*, 2022 WL 21781418 (E.D.N.Y. Dec. 1, 2022)(finding that economy outweighed any threat of prejudice in cases brought by two separate plaintiffs for two separate incidents of wrongful termination arising out of substantially similar circumstances).


Thank you for your consideration,


Alex Garber


cc: City Defendants by email and ECF